JOHN T. FARRELL, Appellant, *v.* FIRE INSURANCE SALVAGE CORPS, Respondent.

Second Department, December 12, 1919.

Motor vehicles — negligence — collision between automobile of city fire department and vehicle operated by salvage company while going to a fire — charge — speed limit not applicable — duty of operators of fire vehicles to exercise reasonable care — when fire chief responsible for negligence of chauffeur — no right of way as between vehicles driving to fire — city charter and charter of salvage company construed — evidence justifying verdict for defendant.

While a battalion chief in a fire department of a city and a fire insurance salvage company are not bound by the established speed limit when going to a fire, the drivers of their motor vehicles are both bound to use the care and caution which reasonably prudent men would exercise under similar circumstances, and it was proper for the court so to charge in an action brought by the battalion chief against the salvage company to recover for personal injuries caused by a collision between their respective vehicles.

Where the plaintiff, a fire chief, was riding on the seat with a chauffeur over whom he had full power of direction and authority to dictate the rate of speed at which the vehicle should be driven, he is responsible for the negligence of the chauffeur under the rule of *respondeat superior*.

It appeared that the vehicles, both driven at a high rate of speed, which was proper under the circumstances, collided at a street intersection and there was a conflict in the evidence as to whether the plaintiff could see the defendant's fire truck before the collision. On all the evidence, *held*, that the plaintiff saw the defendant's truck and endeavored to pass ahead of it, or he did not look at all, and that either conclusion by the jury justified a verdict of contributory negligence.

Although the act incorporating the defendant provided that nothing in its charter should warrant an interference with the action of firemen in their duties in extinguishing a fire and that the members of the salvage corps should in all respects be subordinate to and under the control of the city fire department, and although the city charter and ordinances provided that fire apparatus in proceeding to a fire should have the right of way over other vehicles on the city streets, it was proper for the court to refuse to charge that the vehicle operated by the city fire department had a superior right of way over the vehicle operated by the salvage company.

It was proper to charge that while the plaintiff and defendant had a right
of way over other vehicles, as between themselves there was no right of
way in favor of either.

On all the evidence, *held*, that a judgment for the defendant entered on a
verdict of the jury should be affirmed.

APPEAL by the plaintiff, John T. Farrell, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Kings on the 17th day of December, 1918, and also from an order entered in said clerk's office on the same day denying plaintiff's motion for a new trial made upon the minutes.

*Joseph V. Gallagher*, for the appellant.

*B. C. Loder* [*Clarence S. Zipp* and *Amos H. Stephens* with him on the brief], for the respondent.

KELLY, J.:

The evidence presents two conflicting stories of the accident, which were submitted to the jury by the learned trial justice in a charge which correctly states the law, and the verdict establishes the facts in the defendant's favor. The plaintiff, a battalion chief in the fire department of the city of New York, in the performance of his duty was on his way to a fire. He was riding in the front seat of a fire department automobile, seated beside one of his subordinates, a fireman regularly detailed as a driver. The automobile was proceeding easterly along Decatur street, in Brooklyn, which is intersected by Lewis avenue running north and south. At or near the intersection of the two streets, the automobile in which plaintiff was seated, collided with a large automobile fire truck of the defendant proceeding to the same fire in answer to the same alarm which had summoned the plaintiff. The collision occurred about half-past seven o'clock in the morning. The fire alarm came from a box at the corner of Jefferson and Stuyvesant avenues. Both vehicles were endeavoring to reach the alarm box, the plaintiff proceeding east on Decatur street to Stuyvesant avenue, one block away, at which point he would turn to the north, five blocks to Jefferson avenue, and the defendant's truck north on Lewis avenue to Jefferson avenue, at which point it would turn one block east to Stuyvesant

avenue. Both the plaintiff in his automobile and the defendant's fire truck were undoubtedly traveling at high speed. That is what the vehicles were intended for; they were equipped with alarm bells, and defendant's truck had a siren whistle. Plaintiff testified that the fire truck came north on Lewis avenue at the rate of twenty-five to thirty miles an hour; defendant's captain estimated their speed at fifteen to twenty miles an hour. Defendant's captain in charge of the fire truck says that the plaintiff's automobile was going fast, but he did not attempt to state the rate of speed. Other occupants of the truck described the plaintiff as traveling at a high rate of speed. One of defendant's witnesses observing both cars, testified that plaintiff's car, the smaller of the two, seemed to go faster than defendant's truck; " it seemed to shoot through the air quicker."

The learned trial judge told the jury that when an alarm of fire is sent out it is of the greatest importance that it be answered with celerity for the protection of life and limb and property and the preservation thereof, and that it was the right, if not the duty of the two vehicles, to answer such alarm with the greatest practicable speed; that the city ordinances limiting the speed of vehicles did not bind plaintiff or defendant. But the learned judge told the jury that plaintiff and defendant were bound to exercise reasonable care, reasonable control, to be on the alert, on the lookout and to be observant of the rights of others who had the right to be upon the streets. He said the obligation was the same as to each motor vehicle. Both vehicles had a right to go upon the street. It was their duty to answer the call, but they were bound to exercise the care and caution which reasonably prudent men would exercise under similar circumstances. This was the law of the case as laid down by the trial judge, and no exception was taken to the charge in this particular. Whether the plaintiff or the defendant's representatives in charge of the motor truck fulfilled this duty was entirely a question of fact. The trial judge told the jury that the plaintiff must prove that he was free from fault; that it was conceded that he was in the automobile with a driver sitting on the same seat with him and in control of the vehicle. The learned counsel for plaintiff excepted to the statement of the court that it was conceded

Second Department, December, 1919.    [Vol. 189.

that plaintiff was in control of the vehicle, and the judge, stating that he thought the fact was conceded, then charged the jury that the plaintiff, sitting alongside the driver, was obliged to use that care and caution which the circumstances demanded of him, being in control of the driver and the vehicle; that he was obliged on his own account to use reasonable care and due regard for those who had a right to be upon the street and had equal rights with himself. Plaintiff's counsel excepted to this portion of the charge and argues that the jury was in effect instructed that any negligence on the part of the fireman driving plaintiff's automobile was imputable to plaintiff. Counsel says that the rule of *respondeat superior* did not apply. But the plaintiff, battalion chief, was the superior of the fireman driving his car. The fireman chauffeur was subject to his orders. He testified, in answer to counsel for plaintiff, that plaintiff gave him instructions about the operation of the machine on this very trip, told him to take his time, that plaintiff was a man who would not ride fast, and if he (the chauffeur) " went to go over 20 miles an hour he told me to slow down." And the plaintiff himself testified: " Q. Of course he [the chauffeur] was under your direction. A. Yes. Q. You could tell him to go fast or slow, and he would have to obey you, no question about that? A. Yes. Q. This man was driving for you, and you were in charge of that vehicle, weren't you? A. Yes, he was the regularly assigned chauffeur. Q. You were in charge of him and in charge of that vehicle? A. Yes. * * * Q. That is, he had to obey your orders and your instructions, no question about that? A. Yes." The charge of the learned trial judge appears to be accurate in this respect.

When we examine the evidence of the plaintiff and his witnesses, and the evidence of those in charge of the defendant's fire truck, we find that both parties admit their desire to reach the fire as soon as possible. There is evidence that the alarm bell was ringing on plaintiff's automobile, and a similar bell on defendant's truck, and that the siren whistle on the latter vehicle had been sounded several times. Neither the plaintiff nor his fireman chauffeur, or the captain of defendant's truck and his men, heard any signal save their own. This is not surprising. When we come down to the time when the motor

vehicles approached the intersection of the two streets each party testifies to slackening speed. The streets cross at right angles. Plaintiff says that when twenty-five feet from Lewis avenue he could look to the south on that avenue a distance of seventy feet, and that defendant's truck was not in sight. When he was eighteen feet west of the building line on Lewis avenue he could see all the way south to Fulton street two blocks away; that he was looking to the south continuously and had an uninterrupted view, but that he did not see the approaching truck until it was in front of him; that " as quick as a flash of lightning the insurance patrol appeared in front of us." The collision was head on — the plaintiff's automobile going east striking the west or left-hand side of the truck going north. But plaintiff must be mistaken — at any rate, the jury was justified in not accepting his story — because, if he looked to the south when he was eighteen feet west of the building line on Lewis avenue or where his automobile cleared the building line, leaning over so as to get a good view which he said was his custom, he had an uninterrupted view to Fulton street two blocks away — five hundred and forty feet — and he says he saw nothing of the approaching fire truck. From a point eighteen feet west of the building to the point of collision was some fifty-three feet. So, according to his testimony, while his automobile traveled fifty-three feet the fire truck traveled five hundred and forty feet. If the plaintiff's car, which increased its speed as it started to cross Lewis avenue, was then traveling at fifteen miles an hour as the chauffeur testified, the defendant's truck must have come along Lewis avenue ten times as fast or at the rate of one hundred and fifty miles an hour. It is no wonder that plaintiff says it came " quick as a flash of lighting," and that it was going so fast that it was " invisible." There was no other explanation for plaintiff's failure to see it. But of course the jury was not bound to accept this story. A fire truck weighing two and one-half tons cannot travel with the rapidity of lightning, nor so fast as to be invisible, and we are forced to the conclusion that the plaintiff must be mistaken; he either looked and saw the fire truck approaching at high speed and endeavored to pass ahead of it, or he did not look at all. (*Dolfini* v. *Erie R. R. Co.*, 178 N. Y. 1;

*Matter of Harriot*, 145 id. 540, 546.) Either conclusion justified a verdict that he was guilty of contributory negligence. The man operating defendant's fire truck testified that he put on his brakes and slowed down as he was approaching Decatur street; that the road was clear and he started up again. He testifies that just as he reached the house line on Decatur street he saw the plaintiff coming along Decatur street about sixty feet from Lewis avenue. He says if he had stopped, the plaintiff would have run into the truck. He kept on, pulled towards the curb, but plaintiff's car ran into the rear fender on the left side of his vehicle. The captain in charge of defendant's truck testified that he saw the plaintiff approaching when the truck was forty feet south of the Decatur street curb line, and he estimates that plaintiff was at that time seventy feet west of the curb of Lewis avenue. Undoubtedly both of these motor vehicles were moving rapidly. The learned judge told the jury that the duty of each party was the same, to use reasonable care. There was considerable discussion at the trial of " right of way," and the appellant argues here that the learned trial judge erred in refusing a request to charge that the plaintiff's automobile, in the service of the city fire department, had a superior right of way. The learned counsel for the plaintiff says that the question presented by the appeal is of general public interest, and he argues that under the statute incorporating the defendant (Laws of 1895, chap. 1016) the Legislature subordinated the defendant's rights at all times to those of the fire department. But a " right of way " over the city streets does not do away with the requirement that reasonable care shall be exercised at all times. A " right of way " is necessarily subject to the preservation of the safety of those who may be lawfully upon the streets, and while the emergency in the case of fire apparatus undoubtedly justifies speed in driving to the scene of the disaster, such speed must be exerted with reasonable care and due regard to the lives and limbs of those who may be met upon the way. (*Muhs* v. *Fire Insurance Salvage Corps,* 89 App. Div. 389.) The statute under which defendant is incorporated (*supra*) declares: " § 2. The purpose of this corporation shall be to provide suitable rooms for the transaction of its business, and also to provide a salvage corps, and a com-

petent person to act as superintendent, to discover and prevent fires, with suitable apparatus to save and preserve property or life at and after the fire; and the better to enable them so to act with promptness and efficiency, full power is given to such superintendent and to such salvage corps, the right of way in the streets of Brooklyn, Long Island, and to enter any building on fire, or which may be exposed to or in danger of · taking fire from other burning buildings, at once proceed to protect and endeavor to save the property therein, and to remove such property, or any part thereof, from the ruins after a fire. Nothing in this act, however, shall warrant any interference with the action of the firemen in their duties in extinguishing a fire; and the said superintendent and the members of said salvage corps, while on duty at a fire, shall in all respects be subordinate to and under the control of the commissioner of fire of the Brooklyn fire department." Appellant argues that the Legislature thus prohibited any interference by defendant with the city fire department or its vehicles, and so expressly provides that the " right of way " granted to defendant's fire truck in going to a fire is subordinate to the right of way of the city fire apparatus. The Legislature undoubtedly provided that the city fire department should be in control at a fire subject to no interference by defendant or its agents, but they did not attempt to weigh the nice questions of " right of way " between fire apparatus proceeding to a fire, if there could be any dispute on the subject. The object of both organizations is practically the same. While we read of rivalry in the effort to reach the scene of the conflagration, with resulting conflict at times, in the days of the old volunteer fire departments, such conditions do not exist under modern municipal methods. Section 748 of the Greater New York charter (Laws of 1901, chap. 466) provides as follows: " The officers and men of the fire department, and the officers and men of the insurance patrol [the defendant here] respectively, with their apparatus of all kinds, when on. duty, shall have the right of way at and in proceeding to any fire in any highway, street or avenue, over any and all vehicles of any kind, except those carrying the United States mail. And any per-

Second Department, December, 1919.     [Vol. 189

son in or upon any vehicle who shall refuse the right of way, or in any way obstruct any fire apparatus, or any apparatus of the insurance patrol, or any of said officers while in the performance of duty, shall be guilty of a misdemeanor, and be liable to punishment for the same." And in the Code of Ordinances of the City of New York (Chap. 24, art. 2, § 15, subd. 2) precedence in traffic rights is granted to " The officers and men of the fire department and of the fire patrol, with their apparatus of all kinds, when going to, or on duty at, or returning from a fire." Now it is apparent that no priority in right of way is expressly granted by the Legislature as between the city fire department and the defendant. There is another ordinance in the city of New York granting a right of way to vehicles proceeding north or south, as was defendant's truck, over vehicles moving east or west, like plaintiff's car. (Code Ordinances, chap. 24, art. 2, § 15, subd. 1.) It is difficult to perceive how this matter of right of way affects the case, because neither plaintiff nor defendant was relying on a right of way at the time of the accident. The plaintiff did not see or hear the defendant's truck until it flashed before him like lightning from the clouds. So far as the defendant's vehicle is concerned the men in charge say that as they got by the building line in Decatur street, the plaintiff's car was some seventy feet from the street intersection. Certainly it cannot be held as matter of law that in such case, answering a fire alarm, they were obliged to stop the fire truck and wait until plaintiff came up to Lewis avenue and crossed in front of them. The learned trial judge told the jury that while plaintiff and defendant had a right of way over other vehicles, as between themselves there was no right of way in favor of either. This appears to be the correct rule of law applicable to the facts disclosed by the evidence The plaintiff, a fireman who had performed his important and arduous duties with the department for thirty-two years, attaining high rank in the service, met with his injury as part of the dangerous service in which he was engaged; the question whether he exercised the reasonable care which the law required of him, as well as the question relating to the conduct of defendant's servants, were peculiarly for a jury of citizens who could appreciate and understand the situation with

due regard to the rights of each litigant.   The charge of the learned trial judge was eminently fair to both parties, and we think we should not interfere with the verdict or the judgment.

The judgment and order are affirmed, with costs.

Present — JENKS, P. J., PUTNAM, BLACKMAR, KELLY and JAYCOX, JJ.

Judgment and order unanimously affirmed, with costs.