Grimes et al., Appellants, *v.* Yellow Cab Co. et al.

Argued January 13, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

*Elias Magil,* with him *Philip Sterling,* for appellants.

*Joseph S. Lord, III,* with him *Wm. A. Schnader, Bernard G. Segal,* and *Schnader & Lewis,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, March 23, 1942:
This was an action in trespass, arising out of a collision between a taxicab owned by the Yellow Cab Company and a truck of the Fire Insurance Patrol of the City of Philadelphia. Suit was brought jointly by Thomas Magan, the driver of the truck, and three other employees

of the Fire Insurance Patrol who were riding on the back of the truck at the time of the accident, James Grimes, Harry Krueger and George Rothman, to recover for personal injuries, and by the Fire Insurance Patrol of the City of Philadelphia, to recover for property damage to the truck. Magan and the Fire Insurance Patrol were brought upon the record as additional defendants by the Yellow Cab Company, and it filed a counterclaim for damage to its taxicab. Compulsory nonsuits were entered as to the Fire Insurance Patrol and Magan, at the conclusion of the evidence for plaintiffs on liability, and when plaintiffs had completed their case, the trial judge directed verdicts in favor of the Yellow Cab Company and the Fire Insurance Patrol, additional defendant, as to Grimes, Krueger and Rothman, who then suffered voluntary nonsuits as to the additional defendant Magan. No evidence having been presented by the Yellow Cab Company, a verdict was also directed against it on the counterclaim. Magan and the Fire Insurance Patrol filed motions to remove the nonsuits as to them, and Grimes, Krueger and Rothman filed motions for a new trial. All of these motions were dismissed by the court en banc and judgment was entered on the directed verdict in favor of the Yellow Cab Company as to Grimes, Krueger and Rothman. Magan and the Fire Insurance Patrol now appeal from the refusal to take off the nonsuits, and Grimes and Rothman have appealed from the entry of judgment in favor of the Yellow Cab Company. Krueger has not appealed.

The accident occurred at about 9:00 p.m. on March 13, 1938, at the intersection of Twenty-third Street and the Parkway, in the City of Philadelphia, where, as is well known, there are no buildings within hundreds of feet to interfere with the view of approaching drivers. The fire patrol truck had entered the middle lane of the Parkway, which runs northwest and southeast and is eighty feet in width from curb to curb, at Twenty-first Street, and was proceeding northwest, on its own right

side of the center lane of the Parkway, about seven feet from the right-hand curb, at a speed of twenty to thirty-five miles per hour, going to a fire. Two large red automatic blinker lights located on the top of the truck, at the front, were in continuous operation, as were also its gong and siren, which were clearly audible for a distance of several city blocks. Magan, the driver, testified that the traffic signal light at the intersection of the Parkway and Twenty-third Street was green in his favor and that there was nothing in the intersection when the truck reached a point about seventy-five feet from the intersection; that he proceeded forward, "looking straight ahead"; that he first saw the taxicab as the rear wheels of the truck cleared the westerly rail of a set of trolley tracks located in the center of Twenty-third Street, which is forty feet in width and runs north and south, and that it was then fifteen to twenty-five feet away. He also testified that after the accident he observed that the windshield and windows of the taxicab were foggy and covered with mist. One Myers, who was riding in the cab of the truck, beside the driver, testified that all he saw of the taxicab was "the flash of yellow" at the instant of the collision. Grimes, Krueger and Rothman, who were riding in the back of the truck, did not see the taxicab at all before the collision, because they were facing backward and had their coat collars up to protect their faces from a cold drizzle or sleet that was falling. The impact did not occur until the truck had traveled three-quarters of the way across Twenty-third Street, when it was struck by the taxicab, near the middle of its left side, with such force that Grimes, Krueger and Rothman were thrown completely out of the truck, Grimes being thrown a distance of thirty feet, and the truck itself, weighing a ton and a half, was thrown against a light standard at the northwest corner, breaking it off, and was turned around, so that when it came to rest it was facing northeast, with its rear wheels on the curb at the northwest corner. The taxicab proceeded for a distance of eighty

feet before it was brought to a stop, on the grass plot to the south of the center drive of the Parkway, twenty-five feet from the southwest corner.

The court below concluded that this evidence was insufficient to sustain a recovery on the part of any of the appellants, stating as follows: "On the evidence in this case one might conjecture negligence on the part of the defendant, but it cannot be said that a finding of negligence could be properly based on the proven facts. The taxicab according to the evidence having been first seen when very close to the Insurance Patrol with no evidence of its speed or manner of operation, presents nothing more than a mere happening of a collision. Such a case cannot be given to a jury." We think this was error. While it is true that the mere happening of a collision between two motor vehicles, in the absence of evidence as to the manner of its occurrence, affords no proof that one party and not the other was at fault (*Brooks v. Morgan,* 331 Pa. 235, 239; *Hutchinson v. Follmer Trucking Co.,* 333 Pa. 424, 426; *Ranck v. Sauder,* 327 Pa. 177, 180), it is also true that the fault of the operator of the alleged offending vehicle need not be established by the direct testimony of eyewitnesses, where such proof is unavailable, as it oftentimes is, but may be shown by proof of attending circumstances from which it can legitimately be inferred that the accident would not have happened if he had used due care (*Pfendler v. Speer,* 323 Pa. 443, 445; *Ranck v. Sauder,* supra, 180; *Brooks v. Morgan,* supra, 239). Such circumstances were here shown.

It has been held, repeatedly, that care at street crossings is the highest duty of a motorist. "We have held over and over again that at street crossings drivers must be exceedingly vigilant to have their cars under such control that they may stop at the slightest sign of danger. If they do not, and an accident results, they are liable in damages for its consequences": *Gilles v. Leas,* 282 Pa. 318, 320. As was said in *Byrne v. Schultz,* 306 Pa. 427,

433: "The law only makes obligatory the rule of common sense regarding the duty of a driver at the intersection of streets, where traffic is very dangerous because conflicting. He must be vigilant, must exercise a high degree of care, must have his car under complete control, and must look, and see what is visible, before attempting to cross the intersecting street. This duty has not been relaxed by the introduction of traffic officers and signals, both of which are intended to facilitate traffic and render crossings less dangerous". See also: *Goodall v. Hess,* 315 Pa. 289, 292; *Fearn v. City of Philadelphia,* 320 Pa. 156, 158; *Logan v. Bethlehem City,* 324 Pa. 7, 11. And this is particularly so where there are unusual weather conditions such as were here shown to have existed at the time of the accident *(Hutchinson v. Follmer Trucking Co.,* supra, 427), and where the driver is entering a main thoroughfare from a side street, as was the driver of appellee's taxicab *(McNulty v. Horne Co.,* 298 Pa. 244, 247). Although no witness described, from actual observation, the course, speed and method of operation of appellee's taxicab, appellants' evidence does establish that the taxicab entered the intersection when the fire patrol truck was less than seventy-five feet from the intersection, with its driver completely oblivious to what his eyes and ears must have told him, and that it proceeded a distance of nearly seventy feet across the center drive of the Parkway into the side of the truck, in spite of the fact that it must have been apparent at all times, from the speed of the truck and the warnings of its blinker lights, which were plainly visible, and its bell and siren, which were clearly audible, that it intended to make the crossing. This evidence, coupled with the evidence as to the distance the taxicab continued after striking the fire patrol truck and as to the violence of the impact, would clearly justify the conclusion that appellee's driver was traveling at an excessive rate of speed, or was not exercising the high degree of watchfulness required of motorists at street crossings, and was, in our

opinion, sufficient to carry the question of the taxicab driver's negligence to the jury. See *Schoepp v. Gerety,* 263 Pa. 538; *Robb v. Quaker City Cab Co.,* 283 Pa. 454; *Johnston v. Cheyney,* 297 Pa. 199; *Smith v. Wistar,* 327 Pa. 419.

As to appellants Magan and the Fire Insurance Patrol, the court below thought there could be no recovery for the additional reason that Magan admitted he "did not look to the side", as he approached the intersection, but was "looking straight ahead." We are unable to conclude that this is necessarily so. "The test for contributory negligence is whether the act [alleged as] constituting the negligence contributed in any degree to the production of the injury: *Creed v. P. R. R.,* 86 Pa. 139, 145; *Gould v. McKenna,* 86 Pa. 297, 303. If it did, there can be no recovery": *Robinson v. American Ice Co.,* 292 Pa. 366, 369. See also: *Goldschmidt v. Schumann,* 304 Pa. 172, 176; *McFadden v. Pennzoil Co.,* 341 Pa. 433, 436. Here, Magan's failure to look to the side as he approached the crossing, which is "the act alleged as constituting the negligence", may or may not have been a contributing cause of the accident, depending upon the facts as to the speed of the taxicab, the distance it was away, the side of the street on which it was approaching, and other circumstances, as to which no proof has as yet been adduced. It may be that the taxicab was not proceeding along Twenty-third Street at all, but was traveling southeast on the southerly lane of the Parkway, as the appellee itself suggests, so that it would not have been visible to Magan if he had looked, and suddenly deviated its course into the center lane or, irrespective of the direction in which it was proceeding, it may be that if Magan had looked, and seen the taxicab, he might reasonably have expected that he would have ample time to cross in front of it, or that it would stop, and it may have suddenly increased its speed or swerved to the opposite side of the street from that on which it was approaching, at a time when it was too late for him to act to avert

the collision. It is thus apparent that, as the record now stands, it cannot be affirmed that Magan's failure to look was a contributing cause, or a cause at all, and that the entry of the nonsuits as to him and the Fire Insurance Patrol on the ground that it was, was improper. As in the case of the alleged negligence of the defendant, contributory negligence on the part of a plaintiff must at least be shown by circumstances from which such negligence may be inferred, and the burden of proof, in this instance, rests with the defendant. A plaintiff, in order to recover, is not required to disprove contributory negligence, but only to make out a case which does not conclusively disclose its existence, and we think this was here done. See *Ely v. Railway*, 158 Pa. 233, 238; *Coolbroth v. Penna. R. R. Co.*, 209 Pa. 433, 439; *Straus v. Rahn*, 319 Pa. 93, 95.

The assignments of error are sustained, the judgments are reversed, and a venire facias de novo is awarded.

DISSENTING OPINION BY MR. JUSTICE DREW:

From a careful reading of the record in the light most favorable to appellants, I am firmly convinced that the learned court below fell into error in ruling that the driver of the taxicab was not shown to have been negligent. Thomas Magan, the operator of the fire truck involved in the collision, testified that when he was seventy-five feet southeast of the intersection of the Parkway and 23rd Street, where the accident occurred, there was no traffic in the crossing and the signal light there was green in his favor. He further stated that he did not again look at the light, but continued northwest, at approximately twenty-two miles an hour, toward the intersection, observing traffic conditions straight ahead of him. It was stipulated at the trial by counsel for the parties that the traffic signal in question took four seconds to change from green to red. Therefore, even if the light had started to change immediately after Magan

observed it, it is obvious that it could not have yet turned red for the Parkway traffic when the first truck was passing through the intersection. Clearly, then, the taxicab must have been driven north on 23rd Street through the red light into the Parkway. Furthermore, it is equally clear from the testimony adduced that the taxicab driver did not look to his right when he reached the Parkway, as he was required to do, otherwise he would have seen the fire truck approaching on the Parkway a short distance away with its headlights lighted and its red blinker lights flashing. The gong and the siren on the fire truck were in continuous operation and were clearly audible for a distance of several city blocks. It is well settled that at street crossings drivers of motor vehicles must be highly vigilant and maintain such control that they can stop their cars on the shortest possible notice: *Goodall v. Hess,* 315 Pa. 289, 292. Therefore, as determined by the majority, the negligence of the driver of the cab was sufficiently shown to warrant the submission of this question to the jury.

However, I cannot concur in the opinion of the majority of the Court that Magan's failure to look for cross traffic at the intersection was not a contributing cause of the collision. Magan stated that, although it was raining and sleeting at the time, he approached the crossing in question, at about twenty-two miles an hour, without making any effort in the least at or near the intersection to observe cross traffic. He testified that from a distance of seventy-five feet southeast of the crossing he looked straight ahead and did not turn his vision either to his right or left. Had Magan looked when nearing 23rd Street, he would have observed the taxicab to his left in sufficient time to have avoided the collision. As to the duty of an operator of a motor vehicle at a crossing, it was said, in *Spear and Company v. Altmyer,* 124 Pa. Superior Ct. 9, 14: "A driver approaching an intersection must not only look for cross traffic when he first reaches it, but must continue to look as he crosses in

order to avoid a possible collision. The failure to perform this duty renders him contributorily negligent: *Riley v. McNaugher,* 318 Pa. 217, 178 A. 6; *Shapiro et ux. v. Grabosky,* 320 Pa. 556, 184 A. 83; *Stevens v. Allcutt,* 320 Pa. 585, 184 A. 85. The fact that such a driver is on a through highway, or otherwise has the right of way, does not relieve him of his duty of care at intersections: *Bailey v. C. Lewis Lavine, Inc., et al.,* 302 Pa. 273, 153 A. 422; *Byrne et al. v. Schultz,* 306 Pa. 427, 160 A. 125." See also *Rhinehart v. Jordan,* 313 Pa. 197, 200. Unusual conditions of the weather make it imperative that a driver pay extremely careful attention to the roadway: *Hutchinson v. Follmer Trucking Co.,* 333 Pa. 424, 428. These principles of law apply to the drivers of fire patrols, as well as to the operators of other types of automobiles.

Fire patrol vehicles while acting in emergencies are exempt, under The Vehicle Code of May 1, 1929, P. L. 905, as amended, from restrictions as to speed [section 1002(f)], through "stop" highways [section 1016(d)] and traffic signals [section 1026(d)]. However, the general restriction imposed upon the operators of such vehicles is merely that they may not drive in "reckless disregard of the safety of others": *Reilly v. Philadelphia,* 328 Pa. 563, 567. We said in *Cavey v. Bethlehem,* 331 Pa. 556, 558: "What constitutes a reckless want of care on the part of the operator of a motor vehicle varies with the circumstances of the particular case. In the Restatement, Torts, section 500 (p. 1293), it is set forth that a person has acted in reckless disregard for the safety of others 'if he intentionally does an act or fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.' " Certainly, the action of the driver of the fire patrol vehicle in ap-

proaching the intersection, under the circumstances here present, without looking to his right or left, created a situation of grave peril to all persons and vehicles approaching the Parkway from 23rd Street. In so doing, obviously Magan drove in "reckless disregard of the safety of others" and greatly contributed to this accident. While the driver of a fire patrol vehicle, when speeding to a fire and when audible signal of his approach is given, cannot be held to the same duty as an operator of another type of automobile (*Rommel v. American Stores Co.,* 103 Pa. Superior Ct. 384, 386); nevertheless, even though he may have the right of way, he cannot escape responsibility by merely opening his siren or ringing his gong and rushing madly through a crossing totally oblivious of cross traffic. Relative to the care required of drivers of fire department vehicles, it is stated, in Berry, The Law of Automobiles, Sixth Ed., Vol. 1, §1055 (p. 901): "A 'right of way' over city streets does not do away with the requirement that reasonable care shall be exercised at all times. It is necessarily subject to the preservation of the safety of those who may be lawfully upon the streets, and while the emergency in the case of fire apparatus justifies speed in driving to the scene of the fire, such speed must be exerted with reasonable care and due regard for the lives and limbs of those who may be met upon the way. Hence, the chief of a fire department, who was injured while driving to a fire in an automobile, by collision with a salvage corps truck at a street intersection, was bound to look for approaching vehicles as he neared the intersection, and to exercise reasonable care generally [citing *Farrell v. Fire Ins. Salvage Corps,* 189 App. Div. 795, 179 N. Y. Supp. 477]".

Therefore, I dissent from the opinion of the majority in granting a new trial to Magan and Fire Insurance Patrol of the City of Philadelphia, since these two appellants obviously did not present a cause of action clear of contributory negligence.

As to the other appellants, James Grimes and George Rothman, who were fellow employees of Magan riding in the hear of the fire patrol truck, I am satisfied that they should be granted a new trial, for there is nothing in the testimony to show that they had any voice in the selection of the driver or in the manner in which the fire truck was operated. The negligence of Magan, the driver, under such circumstances, could not be imputed to them. In this connection, it is stated, in Berry, The Law of Automobiles, Sixth Ed. Vol. 1, §631 (p. 507): "Where plaintiff and another were riding upon the rear of a truck which was being driven at a high rate of speed to a fire, and plaintiff had no voice in the selection of the driver, and no control over his actions or the speed of the truck, but was required by his duties to mount thereon and proceed to the scene of the fire upon an alarm being given, and render such assistance as was possible, and while riding thereon a collision occurred between said truck and a street car, resulting in injuries to plaintiff, the negligence, if any, of the driver of said truck could not be imputed to plaintiff. [citing *Norwood Transp. Co. v. Crossett,* 207 Ala. 222, 92 So. 461; *Donoghue v. Holyoke St. R. Co.,* 246 Mass. 485, 141 N. E. 278; *Grand Rapids v. Crocker,* 219 Mich. 178, 189 N. W. 221; *Oklahoma R. Co. v. Thomas,* 63 Okla. 219, 164 Pac. 120; *Burleigh v. St. Louis Transit Co.,* 124 Mo. App. 724, 102 S. W. 621]".

For these reasons, I would affirm the action of the learned court below in its refusal to take off the nonsuits as to Thomas Magan and Fire Insurance Patrol of the City of Philadelphia, and would reverse the judgment as to James Grimes and George Rothman and grant them new trials.