Pascarella *v.* Kelley, Appellant.

Argued March 22, 1954. Before STERN, C. J., STEARNE, JONES, MUSMANNO and ARNOLD, JJ.

*R. T. Mutzabaugh,* with him *Nash & Mutzabaugh,* for appellants.

*Marvin D. Power,* with him *John A. Fitzgibbon, McDowell & McDowell,* and *Margiotti & Casey,* for appellees.

OPINION BY MR. JUSTICE ARNOLD, May 24, 1954:

Defendants, S. A. Whitney & Company and Kelley, appeal from the refusal of their motions for new trial and judgment n.o.v. in a trespass action for property damage alleged to have resulted from various negligent acts of defendants. Coleman, another defendant, permitted plaintiffs to take judgment against him by default, and is not a party to this appeal.

Taking the facts in a light most favorable to the plaintiffs, as we are bound to do, the following appears: In 1947 and prior thereto plaintiffs owned and operated a hotel in the city of Bradford, the building being immediately adjacent to and supported by a bank of Tunungwant Creek. In 1947, as a flood control measure, the Commonwealth undertook the dredging and deepening of the channel of the creek. For the project the Commonwealth employed various persons in various capacities, among whom were these defendants. Kelley was hired as a foreman having general supervision and control of the operations. Cole-

man owned a bulldozer and he, with his equipment, was hired to dredge and remove matter from the channel. S. A. Whitney & Company, a partnership comprised of defendants Pugh and Whitney, along with its bulldozer and other equipment, was also hired, approximately 2 weeks before Coleman left the job. Both Coleman and Whitney & Company had bulldozers operating on the project at the same time—a period of some two weeks—after which only Whitney & Company were on the job. The various defendants operated independently of each other insofar as responsibilities were concerned, each being independent contractors.

Sometime in the course of the operations a bulldozer had come too close to the building, and had damaged the foundation wall by driving holes into it and pulling out parts of the foundation. Immediate complaint was made to Kelley, who stated that he would have it repaired ("I will fix it up"). Some gravel was pushed up against the side of the building and nothing more was done. Plaintiffs, in reliance upon Kelley's promise and acts, and without further inquiry, assumed that it had been properly repaired. However, the following spring the foundation gave way as a result of customarily high water in the creek, resulting in severe damage to the building. Plaintiffs submitted testimony that what was done to repair was not sufficient to prevent erosion and undermining.

There was no evidence definitely or even by inference pointing to the fact that the bulldozer or equipment of S. A. Whitney & Company caused the injury to the building. In fact, the direct evidence was that it was caused by Coleman's bulldozer. The only testimony concerning Whitney & Company was that they had done some work in the creek, and in the course of their work, after the building had been damaged, they had pushed some gravel against the side of the

building, and in "cleaning up" had removed logs from a point near the building.

It must be borne in mind that the negligence alleged against each of the defendants is not claimed to be joint, nor is it claimed that any of these defendants were in the relationship of master and servant; but they are alleged to have been individually negligent, independently of each other's acts.

Plaintiffs had the burden, not only to prove the negligent act, but also to prove who was chargeable therefor, the mere happening of the accident not being evidence of negligent conduct: *Lanni v. Pennsylvania Railroad Company,* 371 Pa. 106, 109, 88 A. 2d 887. It is true that the negligence need not be proved by direct evidence, but to establish it by circumstantial evidence, the facts and circumstances must reasonably and legitimately impute negligence: *Grimes v. Yellow Cab Co.,* 344 Pa. 298, 302, 25 A. 2d 294; *Loch v. Confair,* 372 Pa. 212, 216, 93 A. 2d 451. "A jury is not permitted. . . . to speculate or guess; conjecture, guess or suspicion do not amount to proof"; *Lanni v. Pennsylvania Railroad Company,* 371 Pa. 106, 110, 88 A. 2d 887. Applied to this case, these principles leave no room for attaching liability to S. A. Whitney & Company. Nowhere in the evidence does it appear that they had any connection with the occurrence causing the original damage, nor with the attempted repairs, either directly or by inference. The mere incident of some gravel being pushed against the building by their equipment in the course of the later work is not sufficient to impose liability upon them, since there was nothing to indicate that in any manner it had anything to do with the injury. On the contrary, the proof was decidedly to the effect that Coleman alone caused the original injury, and that Kelley sought

to have it repaired. The judgment against S. A. Whitney & Company must therefore be reversed.

The judgment against Kelley must also be reversed and a new trial granted as to him. Seeking to fix liability upon him, plaintiffs' testimony was to the effect that he was general foreman in charge of the operations; that when approached by plaintiffs at the time the original damage was done, he promised them that it would be repaired ("I will fix it up"); that he proceeded to repair it by having loose gravel pushed against the side of the building; that the repair was inadequate and was negligently done; and that plaintiffs reasonably relied upon his promise and acts. As we have already noted, it is not claimed that the negligence of these defendants was joint, nor that their relationship was that of master and servant. The theory upon which plaintiffs proceed is that the defendants were individually negligent, independent of each other's acts.

Kelley cannot escape liability on the theory that plaintiffs, by failing to inspect after repairs, were guilty of contributory negligence. There was nothing to show that such duty rested upon them. They had a right to rely upon Kelley's performance of his duty. The test for contributory negligence is whether the alleged negligent act of the plaintiff contributed to the production of the injury, and we cannot say as a matter of law that the acts of plaintiffs constituted negligence under these circumstances. Kelley did not satisfy the burden resting upon him to establish the negligence, plaintiffs being under no duty to disprove their own negligence. See *Grimes v. Yellow Cab Co.*, 344 Pa. 298, 25 A. 2d 294.

By virtue of his position, Kelley was under a special obligation to plaintiffs to act with due foresight

in repairing the damage, and could be held accountable. Cf. *Ebbert v. Philadelphia Electric Company*, 330 Pa. 257, 198 A. 323. He was not liable at the point of original damage, having had no part in the acts causing it, but "If a party make a gratuitous engagement and actually enters on the execution of the business and so negligently does it from want of care that another suffers damage thereby, an action will lie for this misfeasance": *Rehder v. Miller*, 35 Pa. Superior Ct. 344, 347. See also *Fleming v. Philadelphia Company*, 234 Pa. 74, 82 A. 1095; *Harris v. Lewistown Trust Company*, 326 Pa. 145, 191 A. 34. Thus, if Kelley is to be held liable, it must be without regard to the original negligence; in fact, he cannot be held accountable for the latter in any manner. And, under proper instructions, the facts of this case could be held to impose liability upon him for his own acts independent of those of other individuals involved.

However, the court's charge did not differentiate between the theories of liability nor the acts for which each defendant could be held responsible. Aside from general statements of law regarding negligence and proximate cause, the only reference singling out Kelley's position in the case was that to find a verdict against him the jury had to "find that he was guilty of some act of negligence and that this negligent act in some manner contributed to the collapse of this foundation wall." There is no way of determining on what basis the jury held him liable. It could well have been that they decided he was chargeable with responsibility for the acts creating the original damage by reason of his capacity as general foreman, rather than because of his acts of repair; and it is not for this Court to guess the theory on which the verdict rested. Although only a general exception was taken

to the charge, we feel that this is fundamental error, and a new trial must be ordered.

Judgment against John Pugh and S. A. Whitney, trading as S. A. Whitney & Company, is reversed and here entered in their favor.

Judgment against C. Leo Kelley is reversed and a new trial ordered.