## Abbott *v.* Steel City Piping Company, Appellant.

Argued October 6, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

414

 reargument refused
April 29, 1970.

*Stephen D. Marriner,* with him *McCreight, Marriner & McCreight,* for appellant.

*George Raynovich, Jr.,* with him *Samuel L. Rodgers,* and *Stone & Raynovich,* and *Rodgers & Roney,* for appellee.

OPINION BY MR. JUSTICE JONES, March 20, 1970:

On July 29, 1963, Charles Abbott was employed by Larson Construction Company (Larson) at the construction site of the Donaldson Crossroads Shopping Center. Larson was the general contractor for the project, and had subcontracted the masonry work (bricklaying and building of walls) to Keystone Masonry Construction Company (Keystone), and the plumbing work to Steel City Piping Company (Steel City). On the date in question, a theater building was being constructed and Abbott, standing on the roof joists, was unhooking bundles of roofing as a crane lowered them onto the joists. While he was doing this, according to Abbott's testimony, something went wrong and "I felt everything going out from under me. I turned, jumped, grabbed the top of the wall with my hands, held on as long as I could until the bricks come [sic] down. Then I landed in the debris." In short, *something* caused the joists, upon which Abbott was standing, to fall.

Abbott instituted a suit in trespass in the Court of Common Pleas of Washington County against the two

contractors, Keystone, and Steel City, and also against the project's architect, Jamrom-Keegan Associates. Larson was joined as an additional defendant. Of vital importance at the trial was the determination, if possible, of what factor or combination of factors caused the joists to fall. A jury verdict of $175;935.05 was returned in favor of Abbott against all the defendants except the architect. Motions for judgment n.o.v. and for a new trial were dismissed by the court, en banc,[1] and judgment entered on the verdict. Only Steel City has appealed from that judgment, seeking a new trial.

"In passing upon the propriety of the refusal of a new trial, our inquiry is whether the court below abused its discretion or committed an error of law which controlled the outcome of the case: [citing cases]. Unlike the appellate review of a refusal to take off a compulsory nonsuit [or a refusal to enter a judgment n.o.v.] where the evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict-winner, ordinarily in reviewing the refusal to grant a new trial we view all the evidence: [citing cases]." *Noel v. Puckett*, 427 Pa. 328, 332, 235 A. 2d 380, 382-83 (1967). *See Austin v. Ridge*, 435 Pa. 1, 6, 255 A. 2d 123, 125 (1969); *Bohner v. Eastern Express, Inc.*, 405 Pa. 463, 471-72, 175 A. 2d 864, 869 (1961); *Sherman v. Manufacturers Light and Heat Co.*, 389 Pa. 61, 68 n., 132 A. 2d 255, 259 n. 2 (1957).

Abbott's theory of liability against Steel City was that this defendant, in violation of the project's plans and specifications, had wrongfully cut a pipe chase in the wall near the point where the wall collapsed, that this had weakened the wall and that it was, at least, a contributing factor to the accident.[2] An obviously

---

[1] One judge dissented.

[2] This "pipe chase" is crucial to the instant appeal; since the term is not one of common usage, we will attempt to explain it ac-

vital question in the case against Steel City was whether the pipe chase had been *cut* out of the wall by Steel City or built directly into the wall by Keystone's masonry workers. Abbott and Steel City presented directly conflicting eyewitness testimony on the point, but that question was decided by the jury against Steel City and need not trouble us now. The following point for charge was read to the jury at the request of Steel City: "If you find that the Steel City Piping Company did not cut any chase in the interior wall of the theater then your verdict must be in favor of the plumbing contractor." Since a verdict was returned against Steel City, the jury, obviously, must have found that the pipe chase was *cut* in the wall by the plumbers.

The first contention of Steel City is that the trial court's charge to the jury was inadequate because it only included a broad, general charge on the doctrine of negligence. Specifically, Steel City claims that the jury should have been charged as to the varying legal duties of a contractor, a subcontractor, an independent contractor, and an architect. Insofar as it related to Steel City, the lower court charged, in brief outline, as follows: in order for the plaintiff to recover, one or more of the defendants must have been negligent; negligence is the failure to exercise reasonable care under the circumstances; a person may be liable for the negligent acts of his servants or agents if done within the scope of their employ; if the act is negligent, it must

---

cording to the testimony at trial. The walls were constructed of cinder block, and, in order to accommodate a vertical, four-inch drain pipe (to drain water from the roof), a channel would be cut from the blocks, leaving only the outer shell of the blocks and removing the ribbing. Customarily, the plumbers precede the masonry workers, so that the pipe is put up first and the wall then built around it. However, on occasion, this order may be reversed so that, in order to install the drain pipe, a slot must be cut out of one side of the cinder block wall, the pipe installed, and then the wall covered over.

also be a proximate cause of plaintiff's injury; even if there is a negligent act which proximately caused the injury, defendant may still avoid liability if the plaintiff was contributorily negligent to any extent; two or more defendants may be jointly and severally liable; the allegedly negligent act which was supposedly done by Steel City was the cutting of a pipe chase near the accident, thus weakening the wall; and, Steel City cannot be found liable if they did not, in fact, cut the aforesaid pipe chase in the wall.

When read as a whole, the charge to the jury appears to be quite clear factually, and to be legally adequate. *See Steinberg v. Sheridan,* 416 Pa. 261, 205 A. 2d 870 (1965). If a case involves multiple defendants, including general and subcontractors, a charge which does not clearly establish which acts each defendant may be held responsible for may be inadequate. *Pascarella v. Kelley,* 378 Pa. 18, 105 A. 2d 70 (1954). However, in the instant case, the charge left no room for the jury to possibly impute the acts of another to Steel City, as was the problem in *Pascarella.* In fact, the trial judge was so clear on this point that the verdict against Steel City was virtually a special finding that Steel City's workers had cut the pipe chase into the wall, and that they were negligent in so doing.

The matter of whether cutting the pipe chase was a negligent act raises another aspect to appellant's complaint with respect to the charge, *i.e.,* that the judge should have told the jury to return a verdict for Steel City if it were found that Steel City had followed the architect's plans and specifications. However, the uncontradicted testimony of the architect was to the effect that: the plans and specifications did not provide for *any* pipe chases to be cut; if one *did* have to be cut, then the plumbing subcontractor was *required* to first obtain the written consent of the architect; and, no such consent, written or otherwise, was ever given by

the architect, nor had such consent ever been requested.[3] In view of the above testimony, the trial court's instruction that Steel City could not be found liable unless it had cut out the pipe chase was equivalent to a direction to the jury to return a verdict for the plumbing subcontractor if it were found to have followed the project's specifications—precisely what Steel City had requested. The question which was left to the jury was whether a reasonable and prudent subcontractor, working under these plans and specifications, and under the conditions in which the defendants found themselves, would have cut out the pipe chases in violation of good practices and in violation of the plans and specifications.

We are convinced that the trial court's charge to the jury, when read in its entirety, clearly and correctly delineated the issues which were to be left to the jury, with respect to Steel City's liability. *See Vaughn v. Philadelphia Transp. Co.*, 417 Pa. 464, 209 A. 2d 279 (1965); *Smith v. Clark*, 411 Pa. 142, 190 A. 2d 441 (1963); *James v. Ferguson*, 401 Pa. 92, 162 A. 2d 690 (1960).

The second issue raised by the appellant is whether the trial judge wrongfully excluded testimony, based on post-accident inspection, that the wall showed no indication of a pipe chase having been cut. The fact which was at issue in this case was whether a pipe chase had been cut in the wall as of July 29, 1963, the date of the accident. Testimony which was based upon a subsequent inspection of the premises would generally be irrelevant and, therefore, inadmissible, unless other evidence could establish that no change had occurred between the date of the accident and the date of the inspection. *Semet v. Andorra Nurseries, Inc.*, 421 Pa. 484, 219 A. 2d 357 (1966); *Murray v. Siegal*,

---

[3] The architect testified that the reason for requiring his prior approval of such a cutting operation was that the cutting might weaken the structure so as to cause it to collapse and fall.

413 Pa. 23, 195 A. 2d 790 (1963); Henry, *Pennsylvania Evidence* §33 (4th ed.). Moreover, whether or not the relevancy of the proposed testimony has been adequately established is a matter to be left largely to the discretion of the trial judge. *Brandon v. Peoples Natural Gas Co.*, 417 Pa. 128, 207 A. 2d 843 (1965); *Wigmore on Evidence* §437 (3d ed.). Accordingly, our consideration is directed to whether the trial court abused its discretion in excluding the proffered testimony.

Steel City offered testimony, which was allowed, as to the condition of the wall and the pipe chase on July 29, 1963, and it also offered testimony as to the conditions which existed from August 9, 1963, to July of 1967, when the trial took place. However, Steel City could offer no testimony about the condition of the pipe chase from July 29, 1963, to August 9, 1963. This gap is absolutely crucial because, an accident just having occurred, repairs were naturally made and the construction work continued. One of Steel City's witnesses testified that a wall which had had a pipe chase cut into it could easily be torn down and replaced by a wall with the pipe chase built into it during such a period. The foreman for the general contractor testified that this section of the wall had, in fact, been torn out and repaired after the accident. Accordingly, we cannot say that the trial court abused its discretion in excluding testimony as to the condition of the wall weeks, months and, in certain cases, years after the accident had occurred, in the absence of testimony equating such condition with the condition existing at the time of the accident.

The third and final claim made by Steel City is that Abbott did not present adequate proof of causation. This aspect of Abbott's case against this particular defendant was based chiefly upon the testimony of James Bilotta, and the first element of the problem is

whether Bilotta was properly qualified to testify as an expert witness. This claim is patently without merit, as is clear from the following partial summary of his qualifications taken from the lower court's opinion: "The witness testified that he is engaged in the general contracting business, operating several firms, composed of himself and members of his family. He is president of these companies, each engaged in various types of building—home building, commercial building and investment building. He holds a Bachelor of Science Degree from the University of Pittsburgh. He claimed to be the field supervisor on all of the jobs engaged in by his companies. By trade, he is a bricklayer, having learned this skill from his father, who had done masonry work all of his life. He further testified that he has been in the general contracting business since the beginning of the year 1952 and had continued in it ever since. He has built dwelling houses, apartment houses, shopping centers and other like structures. He testified that he had built several buildings, three in number, in which the type of construction was masonry walls with steel bar joists and metal roof decking, similar to the Donaldson's Crossroads job. He claimed to be familiar with the reading of blueprints, plans and specifications, as well as with the various types of building materials used in such constructions. On cross-examination, he testified that he constantly keeps abreast of the building trade through publications and journals."

The only real complaints about Bilotta's qualifications to testify as an expert were that he did not have a formal engineering education, and that he was not a qualified expert as to plumbing. As for the latter, his testimony was concerned solely with the construction of walls and roofs and had nothing to do with proper plumbing procedures. As to formal education, we have stated many times that practical experience may, in a

proper case, suffice to qualify a witness as an expert. *E.g., Bloomsburg Mills, Inc. v. Sordoni Constr. Co.*, 401 Pa. 358, 164 A. 2d 201 (1960); *Churbuck v. Union R. R.*, 380 Pa. 181, 110 A. 2d 210 (1955); *Moodie v. Westinghouse Elec. Corp.*, 367 Pa. 493, 80 A. 2d 734 (1951); Henry, *Pennsylvania Evidence* §§560, 563 (4th ed.). The qualification of an expert witness is a matter which is within the discretion of the trial court (*e.g., Hencken v. Bethlehem Mun. Water Authority*, 364 Pa. 408, 72 A. 2d 264 (1950)), and there is nothing on this record to indicate an abuse of such discretion. We find that Bilotta was amply qualified to testify as an expert with respect to the proper construction of walls, particularly where bar joists and roof decking are to be utilized.

The second aspect of this attack upon the proof of proximate cause is the contention that Bilotta's testimony was too hypothetical to be relevant.[4] Because of the complex and vigorously disputed factual situation in this case, the witness was required to assume a number of proven facts in order to give his opinion as to whether certain isolated factors contributed to the collapse of the wall. Nevertheless, his testimony, as it relates to the instant appeal, may be summarized by the following exchange, which occurred after he had been asked to assume the facts as presented by the testimony of other witnesses for the plaintiff.

"Q. Mr. Bilotta, would you tell us what effect the pipe chase had on the collapse of the wall? A. I want to clarify a point, you say the pipe chase was cut or built into the wall? Q. I did not say. A. That would have an effect. Q. Let us presume it was cut into the wall in this area? A. Then I would say that in con-

---

[4] We note that another witness, J. Fred Triggs, also testified that such cutting of a pipe chase tends to weaken the wall, in addition to the aforementioned testimony of the architect and that of Bilotta himself.

junction with the other hypothetical circumstances you've set up, [it] could cause a wall to fall."

In subsequent testimony, Bilotta clarified the relationship of the pipe chase to the other factors which were present as follows: "The effect of the pipe chase was the straw that broke the camel's back, and that in combination with other things—no dur-o-wall, rowlock brick pad—was the thing that caused the wall to fall." All the facts which the witness was asked to assume were warranted by the evidence on the record. *See, e.g., DeFrank v. Sullivan Trail Coal Co.,* 425 Pa. 512, 229 A. 2d 899 (1967). We find that the expert opinion of Bilotta, although necessarily based upon a complex hypothetical situation, was of sufficient clarity to support the jury's finding of proximate causation. *See Bialek v. Pittsburgh Brewing Co.,* 430 Pa. 176, 242 A. 2d 231 (1968).

Judgment affirmed.