537 A.2d 112

Charles A. Butler and Beth Butler, his wife *v.* City of Pittsburgh, Marco Scoratow and Betty Scoratow, his wife, and Freda Morgan. Charles Butler, Appellant.

Argued October 8, 1987, before Judges BARRY and COLINS, and Senior Judge NARICK, sitting as a panel of three.

*Allan M. Cox,* with him, *John A. Caputo, John A. Caputo & Associates,* for appellant.

*Zan Ivan Hodzic,* Assistant City Solicitor, for appellee, City of Pittsburgh.

OPINION BY SENIOR JUDGE NARICK, February 12, 1988:

Charles A. Butler (Butler)[1] has appealed from a trial court's denial of his motion to remove the compulsory non-suit entered in favor of the City of Pittsburgh (City).[2]

---

[1] Despite the fact that Butler's wife's name appears in the case caption, the record reveals that she took a voluntary non-suit before the start of the trial.

[2] Although the non-suit was entered with respect to all remaining defendants, Butler has appealed only the non-suit granted to the City.

In reviewing an appeal from a compulsory non-suit, an appellant must be given the benefit of all favorable testimony, together with all reasonable inferences of fact arising therefrom, and all conflicts in the evidence are to be resolved in his favor. *Flagiello v. Crilly,* 409 Pa. 389, 187 A.2d 289 (1963); *Stevens v. Department of Transportation,* 89 Pa. Commonwealth Ct. 309, 492 A.2d 490 (1985).

With the foregoing in mind, the following is a summary of the evidence. Butler was employed by a contractor hired by the City to demolish a residence which the City had condemned at 2153 Webster Avenue. That structure was a three-story frame dwelling situated between two other residences, with 2155 Webster, another three-story frame house, being located to the right of 2153 as viewed from the street. Because of the proximity of the houses and water damage to 2153, 2153 was demolished using hand tools only. While the walls of 2153 and 2155 were very close together, they did not share a party wall. During the demolition of 2153, no tools or equipment used to raze 2153 came into contact with 2155. The house at 2155 was occupied at the time of demolition by Freda Morgan, whose complaints to the City had prompted the demolition of 2153.

On October 8, 1981, after the house at 2153 had been demolished and the debris removed, Butler and several co-workers were working to level the site. While the foreman operated a highlift nearby, Butler was raking and spreading topsoil approximately three to five feet from the left wall of 2155 when he was struck by falling bricks. Although no one saw the bricks fall from the chimney at 2155, there were bricks missing therefrom after the accident and it is not disputed that the bricks which injured Butler fell from that chimney. Freda Morgan, who was in her home at 2155 on that morning, testified that vibrations from the highlift shook her residence.

On the City's motion, the trial court granted a compulsory non-suit at the close of Butler's case, basing its decision upon Butler's failure to identify a duty owed to him by the City, and for his lack of evidence regarding the existence of a dangerous condition prior to the accident itself. Butler takes issue with these conclusions, contending that there was sufficient evidence to go to the jury on the issue of whether a dangerous condition existed and that the trial court erred in excluding certain testimony of his expert witness, a civil engineer.

We have carefully examined the record, the theories advanced by Butler and the authorities he cites and must agree with the trial court that he failed to establish a duty on the part of the City. Butler argues first that §§341A and 343 of the Restatement (Second) of Torts (1982) (Restatement) subject a "possessor of land"[3] to liability for physical harm relating to dangerous activities (§341A) or conditions on the land (§343). Secondly, he contends that various sections of the Pittsburgh Code (Code) relating to condemnation procedures require the City to supervise the contractor it hires for demolition, and that it is therefore liable for its contractor's failure to follow safety standards.

The first facet of Butler's argument, that the City may be liable as a "possessor of land," overlooks the obvious fact that the dangerous condition did not exist on the land possessed, 2153 Webster. Butler has cited no authority which would hold a possessor of land liable for injuries resulting from a dangerous condition upon adjoining land, and there was no evidence presented that the City was in possession of 2155 Webster. Further, Butler presented no evidence that the City was carrying on its activities, through its contractor, without exercis-

---

[3] We will assume, for purposes of this discussion, that the City may be said to be a possessor of *2153* Webster.

ing reasonable care (Restatement §341A) or that it knew or should have known of the allegedly dangerous condition of the chimney (Restatement §343). There was no testimony to indicate that the methods or equipment employed in the demolition process were unsuitable, unsafe or served to increase the risk of harm to person or property. Although Butler's expert did testify that a pre-demolition inspection of the abutting property was standard practice in the industry, no evidence was presented regarding what, if anything, such an inspection would have revealed. Simply stated, there was no evidence from which it could have been inferred that the chimney was in a defective or dangerous condition prior to the happening of the accident. As our Supreme Court has re-affirmed on many occasions, " '[t]he mere happening of an accident is no evidence of negligence. . . . Plaintiff has the two-fold burden of proving that the defendant was negligent and that his negligence was the proximate cause of the accident. . . .' " *Lanni v. Pennsylvania Railroad Co.*, 371 Pa. 106, 109, 88 A.2d 887, 888 (1952) (citations omitted). Further, " '[i]t is well settled that the conduct is negligent only if the harmful consequences thereof could reasonably have been foreseen and prevented.' " *Finnin v. Neubert*, 378 Pa. 40, 43-44, 105 A.2d 77, 78 (1954), *rev'd on other grounds, Smith v. Bell Telephone Company*, 397 Pa. 134, 153 A.2d 477 (1959) (citations omitted). Secondly, Butler cites several sections[4] of Title 10 of the Code for the

---

[4] The Code sections cited are: §1007.01 (general duties and authority of Bureau of Building Inspection); §1007.13(d) (circumstances under which special inspector is required); §1007.16 (description of characteristics of unsafe buildings); §1007.17 (declaring unsafe buildings to be public nuisances, and providing for demolition in certain cases); and §1009.09 (regarding permits for razing buildings and providing authorization for Superintendent to require barricades or other safeguards he deems necessary).

proposition that the City had a duty to supervise and control its contractor's demolition work. However, it is not the question of whether the City had a duty to supervise and control the contractor that is relevant, but, rather, whether the City had an affirmative duty to inspect or require inspection of adjacent properties for defective conditions. We find *authorization* for City inspectors to inspect any building they deem necessary in order "to determine conformity to the provisions of this title or to investigate conditions liable to . . . endanger life or property." Code §1007.06. This section is, however, discretionary by its terms and we can find no reference in the Code to a mandatory duty to inspect. Because of Butler's failure to present any evidence regarding the condition of the chimney before the subject accident, there simply are no grounds for a conclusion that the City or its agents failed to exercise the discretion provided for in the ordinance.

Butler also argues that the "peculiar risk" doctrine embodied in §416 (work dangerous in absence of special precautions) and §427 (negligence as to danger inherent in the work) of the Restatement should apply. Suffice it to say that this argument is flawed in the same manner as the preceding ones: there was no evidence presented at trial to establish that the City knew or should have known of the danger posed by the chimney located upon adjoining property.

Butler's evidence regarding the existence of a dangerous condition consisted of a pre-demolition photograph (showing three properties on Webster Avenue, 2153 being in the middle, in which the subject chimney and its close proximity to 2153 Webster could be seen) and three post-accident photographs taken from ground level with a telescopic lens (showing the chimney with missing bricks). He argues that this evidence, coupled with the testimony of his expert witness, should have been sufficient to allow the jury to infer that a danger-

ous condition existed. We disagree. While it is apparent that the post-accident photographs were admissible,[5] their relevance relates to the question of liability among the several defendants, and not to the threshold question of duty with respect to the City. The key time for establishing a duty on the part of the City was before the accident occurred, for, as stated above, the mere occurrence of an accident is not proof of negligence. *Lanni; Pascarella v. Kelly,* 378 Pa. 18, 105 A.2d 70 (1954). Butler had to establish that the City either knew or should have known of the danger in order for liability to attach. While we agree with Butler that circumstantial evidence may be used for this purpose, such evidence must, nonetheless, overcome the hurdle of being mere speculation. *See e.g., Brandon v. Peoples Natural Gas Company,* 417 Pa. 128, 207 A.2d 843 (1965). As the Court stated in *Pascarella* at 21, 105 A.2d at 72: "It is true that the negligence need not be proved by direct evidence, but to establish it by circumstantial evidence, the facts and circumstances must reasonably and legitimately impute negligence." (Citations omitted.)

To accomplish that end, Butler attempted to elicit certain opinions from his expert witness, portions of which were excluded by the trial judge. From our review of the record, and based upon the general rule that an expert's opinions must be based upon facts in evidence, *see e.g., Abbott v. Onopiuk,* 437 Pa. 412, 263

---

[5] *See e.g., Schaff v. Meltzer,* 382 Pa. 43, 114 A.2d 167 (1955). Butler, in his brief, distinguishes cases in which evidence regarding post-accident conditions was not admissible, arguing that he was able to relate the condition of the chimney in the photos back to the day of the accident, through the contractor's foreman's testimony. This, of course, is irrelevant. First of all, the trial court *did* admit the photos into evidence. Secondly, the precise issue here was not whether the condition of the chimney changed between the day of the accident and the day the photos were taken, but, rather, what its condition was *prior* to the accident.

A.2d 881 (1970), we conclude that the trial judge did not err in his rulings. Butler posed hypothetical questions to his witness, who was asked to express an opinion regarding the condition of the chimney at the time of the accident. This he was asked to do on the basis of the photographs taken after the accident and his own personal observation of the chimney from ground level several years after the accident occurred. An opinion rendered using that information could have only been based on guesswork. As it has been consistently held that, where proof is by circumstantial evidence, a jury may not reach its verdict on the basis of speculation or conjecture, *Brandon, Pascarella,* the trial court properly excluded the testimony on the disputed points.

For the foregoing reasons,[6] the order of the trial court is affirmed.

---

[6] The City, in its brief, also raises the issue of governmental immunity under 42 Pa. C. S. §8541. This defense was properly pleaded in the City's new matter and Butler denied same based on the so-called "real property exception" found in 42 Pa. C. S. §8542(b)(3). Our Supreme Court in *Mascaro v. Youth Study Center,* 514 Pa. 351, 523 A.2d 1118 (1987) discussed the two conditions which must be satisfied to recover against a party having immunity: (1) that damages would be recoverable under common law or a statute creating a cause of action against one not having immunity, and (2) that the injury must be caused by the negligent acts of the local agency or its employee acting within the scope of its office or duties, excepting therefrom acts of crime, fraud, malice or willful misconduct. The initial inquiry is to determine whether a plaintiff has a cause of action if immunity is not an issue. (In *Mascaro,* a case disposed of via a judgment on the pleadings, the question was whether the appellees had *stated* a cause of action. Because our case was procedurally more advanced, the appellant having already had the opportunity to present his case, we look at whether he has made out a prima facie case sufficient to go to the jury against a defendant not having the benefit of immunity). In light of our holding that Butler did not establish that the City owed him a duty, we need not proceed further with the second step of the immunity analysis. *See Mascaro.*

414

ORDER

AND NOW, this 12th day of February, 1988, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is affirmed.