Torrens et ux., Appellants, *v.* Belfatto.

Argued October 11, 1934.

Before

Trexler, P. J., Keller, Cunningham, Baldrige, Stadt-feld, Parker and James, JJ.

*Frederick H. Starling,* for appellants, filed no brief.

*Frank R. Ambler,* and with him *Harry S. Ambler, Jr.,* for appellee.

Opinion by James, J., February 1, 1935:

Plaintiffs, husband and wife, sued to recover damages arising from injuries suffered by the wife and for damages to the husband's automobile, as the result of being struck by the defendant's automobile. The court below entered a non-suit on the ground of the contributory negligence of the husband and the wife, which subsequently it refused to take off. The plaintiffs have appealed.

In passing upon the question involved in this appeal, we must bear in mind the well established rule that a non-suit can be entered only in clear cases, "when it is inconceivable on any reasonable hypothesis that a mind desiring solely to reach a just and proper conclusion in accordance with the relevant governing principles of law, after viewing the evidence in the light most advantageous to plaintiff could determine in his favor the controlling issue involved: Petres v. Alexy, 104 Pa. Superior Ct. 93."

Viewed in the light most favorable to plaintiff, the

evidence warrants the following statement of facts.
On Sunday afternoon, January 31, 1932, a clear day,
plaintiff in the company of his brother and wife was
driving an automobile in an easterly direction on the
south side of Bunting Road, a State highway known
as a "through highway," approaching Cedar Avenue,
which avenue comes to a dead end at Bunting Road.
Directly across from the end of Cedar Avenue is a
cemetery. Bunting Road is forty feet wide and Cedar
Avenue is thirty feet wide, at the intersection of the
dead end of Cedar Avenue with Bunting Road. As
plaintiff approached Cedar Avenue, he first noticed
the defendant when he was about twenty feet from the
intersection, at which time he was traveling about
twenty or twenty-five miles an hour, and Belfatto, the
defendant, was about twenty to twenty-five feet from
the intersection and traveling at about the same rate
of speed. At the time the plaintiff reached the curb
west line on Cedar Avenue, defendant's car had
reached the houseline on Cedar Avenue. Plaintiff tes-
tified as follows, to wit: "Q. Will you tell what took
place? A. I slowed up and the other car slowed up.
As the other street is a "stop" street, I was sure he
was going to stop, so I proceeded on, and with that
his car shot in front of mine. He must have stepped
on the gas—Mr. Ambler. That is objected to. Q. You
proceeded on and when you got at the intersection,
in other words, when you got even with the curb line
what was the position of Mr. Belfatto's car when the
front of your car was even with the curb line we will
say that would be the west curb line of Cedar Avenue,
what was the position of Mr. Belfatto's car with re-
spect to the curb line of Bunting Road? A. He would
be about the houseline of Cedar Avenue. Q. When you
got to the curb line? A. Yes, sir. Q. Then you reached
the intersection before he did? A. Yes. Q. Then
what took place? A. I proceeded onward and his auto-

mobile shot in front of mine. I swerved to the left to avoid hitting him. His car came right into the intersection, into the middle of the intersection right in the center of Bunting Road. Q. What part of your car and what part of Mr. Belfatto's car came in contact? A. My right front fender and bumper caught his car about midway. Q. Caught his car about midway? A. Yes, sir. Q. Did he swerve or did you swerve? A. I swerved to the left to avoid the crash. Q. What did he do? A. He kept on going straight. By the court. Q. If he kept on going straight he was going over to that cemetery. Is that a cemetery over there? A. Yes, sir. His car turned around when I hit him.'' At the intersection of the dead end of Cedar Avenue with Bunting Road on the right hand side at the curb, appeared a traffic sign on which is marked ''Stop, Thru Traffic.'' Further on plaintiff testified that at the time he crossed the intersection he was traveling at the rate of fifteen miles per hour. The wife when called substantially supported the testimony of her husband, varying somewhat as to the location and the rate of speed of defendant's car.

Section 1014 of the Act of May 1, 1929, P. L. 905, as amended by the Act of June 22, 1931, P. L. 751, Section 2, 77 PS §573, provided: ''The driver of a vehicle entering a through highway or stop intersection which has been established as such under the provisions of this act shall yield the right of way to all vehicles approaching in either direction on such through highway,'' and Section 1016 as amended by the Act of 1931, 77 PS §591, provides as follows: ''It shall be unlawful for the driver or operator of any vehicle ...... before entering a through highway to fail to come to a full stop within reasonable distance before entering the intersection when a ''Thru traffic stop'' sign has been erected in accordance with the provisions of this act.'' Under these two provisions

in view of the testimony, it was clearly the duty of the defendant upon reaching the intersection to stop and to yield the right of way to vehicles approaching the intersection on the main highway from either direction: Dougherty v. Merchants Baking Company, 313 Pa. 558, 169 Atl. 753. Under these sections, the plaintiff had the right of way and unless the rate of speed at which the defendant was traveling indicated that a collision was probable, he had the right to assume that defendant would perform his legal duty. Especially is this true in view of plaintiff's testimony that he did not rely solely on his superior right of way but upon the additional fact of defendant "slowing up" his car indicating his intention to recognize plaintiff's superior right of way. The language used by Justice Maxey in the case of Adams v. Gardiner, 306 Pa. 576, 160 Atl. 589, is particularly appropriate: "We cannot accept appellant's contention that plaintiff's conduct at that time amounted in law to negligence. Being on defendant's right, plaintiff had technically the right of way. While this fact does not, of course, justify a driver possessed of the right of way in forcing his car into an inevitable collision, plaintiff cannot, on the facts as they then appeared to him, be held chargeable with knowledge that a collision was inevitable if he continued on his way. If it appeared to him that his car would reach the intersection first, as he said it so appeared and did, he had a right to assume that the defendant even though going at the rate of thirty or thirty-five miles an hour, would recognize plaintiff's superior right to the intersection and control the car as a considerate driver would under the circumstances, i. e., apply the brakes and slacken his speed. If the plaintiff after reaching the square saw that the defendant had also reached the square and was in fact "picking up speed" (as the former testified) his act in quickly swinging his car

to the right was under the circumstances an act of prudence, and if defendant had showed equal prudence by turning his car to the left the collision would probably have been avoided." Applying this reasoning to the testimony in this case, plaintiff had the right to assume, that the defendant even though going at the rate of twenty-five miles per hour, would recognize plaintiff's superior right to the intersection and control his car. We are therefore convinced that the testimony did not establish such a clear case of contributory negligence as warranted the court below in directing a non-suit.

In arriving at its conclusion, the court below was persuaded as to the correctness of its ruling by the cases of Alperdt v. Paige, 292 Pa. 1, 140 Atl. 555; Otis v. Kolsky, 94 Pa. Superior Ct. 548; Asher & Sons, Inc. v. Warner, 103 Pa. Superior Ct. 569, 158 Atl. 292. In Alperdt v. Paige, supra, in which a non-suit was entered, it was held that where two cars approaching a crossing practically at the same time, the driver who has not the right of way is bound to permit the other to pass before him, unless he himself is so far in advance as to afford reasonable time to clear the crossing and thus in all probability avoid a collision. Otis v. Kolsky, supra, in which a non-suit was entered, the plaintiff did not have the right of way at the intersection. Asher v. Warner, supra, where the plaintiff because its vehicle was an ambulance, relying upon paragraph B of Section 1014 of the Vehicle Code of 1929, was not excused by the statute of the effect of the contributory negligence of the driver.

In view of our ruling that the record does not clearly establish contributory negligence upon the part of the husband, it necessarily follows that the same ruling applies to the conduct of the wife.

Judgment reversed with a procedendo.