Rowles *v.* Evanuik, Appellant.

Norris, Excr. *v.* Evanuik, Appellant.

Argued March 23, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*Carroll Caruthers*, for appellant.

*Henry E. Marker, Jr.,* of *Marker & Rial*, with him *F. Cortez Bell*, for appellee.

OPINION BY MR. JUSTICE HUGHES, June 30, 1944:

This is an action of trespass brought by Mrs. Viola B. Rowles, widow of Carlton J. Rowles, for herself and as trustee ad litem for the Clearfield Trust Company as guardian of Eugene Rowles and Autumn Rowles, against Mike Evanuik, the defendant. The jury returned a verdict in favor of the plaintiff, Viola Bressler Rowles, and against the defendant, Mike Evanuik, for the use of the following persons and in the following amounts, to wit: Viola Bressler Rowles, individually, $1,000.00; for the use of Blaine Norris, Executor of the Estate of Carlton J. Rowles, $978.00; for the use of Clearfield Trust Company, Guardian of Eugene Rowles, $1,404.00; for the use of Clearfield Trust Company, Guardian of Autumn Rowles, $1,618.00; total verdict, $5,000.00.

On January 3, 1942, Carlton J. Rowles was traveling on Route No. 80, in Westmoreland County, as a passenger in an automobile driven by George E. Stone, proceeding in a westerly direction. At the intersection of Route 80 with Route 819, which is a highway running north and south, the automobile driven from the south by the defendant, Mike Evanuik, collided with Stone's automobile and inflicted injuries upon Rowles, resulting in his death. These two highways are made of concrete and cross each other at right angles. The driver of an automobile coming south on Route 819 has a full view of Route 80 toward the east of approximately one-fourth of a mile. The automobiles met in this intersection and the impact of the collision was against the left side of Stone's automobile between the two fenders. The Evanuik automobile received most of its damage to the front end. The photographs introduced of these automobiles show the demolition caused to each of them by the violence of the collision. The marks on the highway indicated the point of impact to be immediately west of the center line of the north and south-bound highway. This would indicate the Stone automobile was on its own side of the road and had gotten beyond the center line of the north and south highway, Route 819. To so meet would require the Stone automobile to have arrived first at that point in the intersection. After the collision, the Stone automobile had skidded sideways for about forty feet and the Evanuik automobile had gone fifty to sixty feet.

On Route 819 as you approach Route 80 from the south is a "Stop" sign. From the point of collision back south along Route 819 for a distance of one hundred and seventy-five feet there was a mark made by a tire. The line of this mark was unbroken at any point, carrying from the point of the first application of the brakes, past the "Stop" sign to the point of collision. The injuries received by Stone and Evanuik were of such

character that even at the time of trial neither could recall the circumstances immediately surrounding the collision. Stone could only recall he was driving his automobile just before the accident. The case had to be submitted on the physical evidence existing immediately after the accident. It is not essential that there should be an eye-witness of the occurrence. The proof may be furnished by circumstances themselves. The test is whether they are such as to satisfy reasonable and well-balanced minds that the accident resulted from the negligence of the defendant: *Reardon v. Smith*, 298 Pa. 554, 558, 148 A. 860; *Ferry v. Philadelphia Rapid Transit Company*, 232 Pa. 403, 406, 81 A. 426; *Pfendler v. Speer*, 323 Pa. 443, 445, 185 A. 618; *Grimes et al. v. Yellow Cab Co.* et al., 344 Pa. 298, 302, 25 A. 2d 294. As these automobiles came to the right angle intersection, Stone's automobile, in which Rowles was riding, was approaching from Evanuik's right. Stone was driving on Route 80, a through highway, while Evanuik approached the intersection on a highway requiring that he stop before entering or crossing. A motorist entering a through highway or stop intersection must exercise the utmost caution to avoid a collision with traffic moving thereon which has the right of way: *Higgins et ux. v. Jones*, 337 Pa. 401, 403, 11 A. 2d 158.

The State policeman who examined the tire marks, stated, concerning the one leading back along Route 819, "Now, this type of mark, in my experience, would be caused by an application of brakes, not by the wheel locking and sliding, but the wheel turning around slower that [than] the car would be traveling at the time and causing it to slightly skid on the wheel." This mark on the highway proceeded continuously one hundred seventy-five feet past the stop sign and went into the intersection of the through highway. Stone, who was on the through highway, had a right to assume that Evanuik would perform his legal duty to stop and yield

the right of way: *Torrens et ux. v. Belfatto,* 116 Pa. Superior Ct. 339, 176 A. 533; and his failure to so stop was negligence. Rowles, the deceased, was a passenger in Stone's car. "When a person is killed in an accident there is a presumption arising from the general knowledge of the strength of the instinct of self-preservation and the natural desire to avoid pain and injury to oneself that the deceased at the time of the accident was exercising due care": *Michener v. Lewis,* 314 Pa. 156, 158, 170 A. 272; *Morin v. Kreidt,* 310 Pa. 90, 97, 164 A. 799. The evidence of negligence of the defendant and the presumption of the exercise of due care by the deceased, in no way rebutted, were sufficient on which to submit this case to the jury. The defendant was not entitled to a judgment non obstante veredicto.

The plaintiff offered to prove that the Clearfield Trust Company was appointed, in Clearfield County, as guardian of Eugene Rowles and Autumn Rowles, by reading into the record paragraph 2 of the statement of claim. The defendant objected on the grounds that the record was the proper evidence and such record was not attached to the statement of claim. The court allowed the offer to stand. The plaintiff then offered oral testimony by the attorney who handled the proceedings in Clearfield County, that the Clearfield Trust Company had been so appointed guardian. The trial judge stated: "If you insist, a certified copy can be furnished later." In his opinion the trial judge points out that this requirement of a certified copy was waived by the defendant and the evidence offered was allowed to stand. Where the defect is the failure to attach an exhibit to meet the proof required, we do not regard the failure to do so as sufficient to warrant us in reversing the judgment on that ground: *Hendley & Company v. Bittinger,* 249 Pa. 193, 196, 94 A. 831, for litigation will not be prolonged or confused by insubstantial objections to the form of statement of the plaintiffs. When the plaintiff has sought

to cure these defects by secondary evidence and the defendant has waived the proof required, the defendant cannot now be heard to complain. We held in *Fuller v. Palazzolo et al.*, 329 Pa. 93, 99, 197 A. 225, that where the name of the legal plaintiff is properly upon the record the manner in which one beneficially interested may appear is not important.

The defendant claims the evidence was insufficient to allow compensatory damages. Rowles at the time of his death was forty-two years old, lived with his family, and was employed by the United States Army Engineers at a salary of $150.00 a month. He supported his wife and children, except for a small amount of income his wife received from a little store. He was shown to be a man of good habits, a steady worker, and was in good physical condition. This testimony is sufficient to support substantial damages. The degree of proof in such cases must vary. It is frequently impossible to prove by direct evidence the actual amount in money contributed by a husband for the benefit of his wife and family. When there is testimony as to the age of the deceased, the expectancy of life, his occupation, the wages he received at and before the time of accident, the condition of his health, his habits of life as to industry, and that deceased was living with and keeping his wife and children, there is sufficient on which a jury can properly find compensatory damages: *Foster v. Butler County Light Company*, 255 Pa. 590, 594, 100 A. 452; *Fuller v. Palazzolo et al.*, supra.

The mortality tables were introduced in evidence showing Rowles' expectancy to be 26.72 years, and defendant complains they were not properly received or their use explained. The learned trial judge explained them to the jury as follows: "So you consider all the hazards of life as applied to this man and only use the expectancy as indicated by the mortality tables—twenty-six years, I believe, was the figure—only use that as a

guide. Accredited life tables are admissible in actions for damages resulting in death or in permanent impairment of earning power. In such a case the victim's expectancy of life is an important factor in the jury's calculations after it is determined that his injuries resulted solely from defendant's negligence, and after it is further determined that the injuries caused either his death or a permanent impairment of his earning power. When the jury has determined the victim's annual pecuniary loss brought about by the latter, it next becomes important to determine what his reasonably justifiable expectations of life duration were just before he received his fatal or incapacitating injuries. How long a person will live to profit by his earning power 'can never be decided accurately in single cases. The most a jury or any one else can do is to approximate it. A man may die in a day, or he may live to earn wages for twenty years. It follows that there must always be an element of uncertainty in every such case. But there are some rules to be observed which aid to some extent in such investigations. Thus, if a man is in poor health, especially if he is suffering from some organic disease which necessarily tends to shorten life, his expectancy is much less than that of a man in robust health. Again, the age of the person and his habits are among the important matters for consideration.' " We indicated such an instruction would be adequate in *Littman v. Bell Telephone Company of Pennsylvania*, 315 Pa. 370, 375, 172 A. 687.

In the charge the learned trial judge stated: "Then also you will be under the duty, if you arrive at any total, to reduce that figure enough to indicate what its fair cash value is by reason of its being paid immediately." And in answer to a statement by counsel for appellee, he stated: "We have already instructed the jury that they would have to reduce any verdict to its present worth by reason of it being paid immediately." Although

this instruction as to present worth was exceedingly brief, it was a correct statement of the law and if counsel for the appellant considered a more extended charge necessary, a point or a request to that effect should have been presented by him. He cannot sit idly by and take an exception after the jury has retired: *Kehoe v. Traction Company*, 187 Pa. 474, 41 A. 310. However, it would have been of greater help to the jury had the court instructed them: "Furthermore, in making an award for the impairment of earning power the jury must bear in mind that when the gross amount of what claimant will lose in future earnings has been calculated, this amount will have to be reduced to its 'present worth,' i. e. to a sum which if paid on the date of the verdict would *then* be a just cash equivalent of the sum total of such lost future earnings. The [a]ward for permanent impairment of earning power must not exceed, though it should equal, *the worth at the date of the verdict,* of a sum payable in normal future installments during what would be the period of the injured person's ability to earn money had he not received the injury or injuries complained of. This sum would be made up by adding the money losses the injured person will sustain from year to year or month to month by reason of such impairment of his ability to earn money, during the reasonably expected duration of his life's future earning period. It is, of course, mathematically certain that this 'present worth' will be substantially less than the gross sum of computed lost future earnings; and the longer the person's life expectancy, the wider will be the gap between this gross amount of calculated lost future earnings and its contemporary value": *Littman v. Bell Telephone Company of Pennsylvania,* supra, page 377.

The appellant further complains there was error in allowing to the plaintiff any award for funeral, nursing, doctor, and hospital expenses. The bills offered in evidence were "to the estate of Carlton J. Rowles." Rowles

met with the accident resulting in his death on January 3, 1942, and the plaintiff commenced this action on August 14, 1942. Rule 2202 of the Pennsylvania Rules of Civil Procedure, Section (b), provides: "(b) If no action for wrongful death has been brought within six months after the death of the decedent, the action may be brought by the personal representative or by any person entitled by law to recover damages in such action as trustee ad litem on behalf of all persons entitled to share in the damages." This rule was to avoid a multiplicity of actions. Under the action started by this spouse she acts as trustee ad litem on behalf of any or all persons entitled to share. The court below allowed an amendment permitting the personal representative to become a party to this action and claim his right of recovery through the trustee ad litem. "Our statutes providing for amendments have always been liberally construed: *Miners Savings Bank v. Naylor,* 342 Pa. 273, 279, 20 A. 2d 287. We all think that the learned judge was right in granting leave to make the correction. Compare *Gentile v. Philadelphia & Reading Ry.,* 274 Pa. 335, 340, 118 A. 223, in which, after the expiration of the limitation period, the court, in an action brought by a 'widow on behalf of herself and minor children, and by the E. & G. Brook Iron Company' was allowed to amend by adding 'for the use of the widow and the iron company, as their interest may appear' ": *Usner v. Duersmith,* 346 Pa. 494, 496, 31 A. 2d 149.

An examination of the record and the charge reveals no reversible errors.

Judgments affirmed.