## Neff, Appellant, *v.* Firth.

Argued April 11, 1946. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

*Herbert A. Barton,* with him *Swartz, Campbell & Henry,* for appellant.

*Frank R. Ambler,* with him *Howard R. Detweiler,* for appellee.

OPINION BY MR. JUSTICE JONES, May 27, 1946:

This is an appeal from an order refusing to take off a compulsory non-suit in a trespass action for damages for injuries to the plaintiff's person and property (an automobile) alleged to have been sustained through the negligent operation of the defendant's automobile. The learned trial judge entered the non-suit, which the court en banc later refused to take off, on the ground that the evidence adduced by the plaintiff at trial "showed nothing but the mere happening of an accident".

The facts in the case, taken in the light most favorable to the plaintiff (*Stephany v. Equitable Gas Company,* 347 Pa. 110, 111, 31 A. 2d 523) are as follows:

About 5 o'clock in the afternoon of February 4, 1942, the plaintiff was driving his automobile northeastwardly on the Roosevelt Boulevard in the vicinity of Fanshawe Street in Philadelphia. The Boulevard, which runs in a northeasterly and southwesterly direction, has four lanes for traffic, each of the outside lanes and the lane nearest to it being for travel in the same direction. The lanes are separated by grass plots. The plot separating the two lanes for northeasterly travel is eight feet wide

at the place of the accident here involved. It is also broken through at that point by a paved cut-off which admits of the passage of a vehicle from one of the northeast travel lanes to the other between street intersections. While the plaintiff was so proceeding in the outer lane at a speed of twenty-five miles an hour about four feet from the separating grass plot on his left, he approached the cut-off above-mentioned. He looked into the cut-off, saw "nothing there but the cut-off" and "drove straight ahead". When he was about two-thirds of the way along the width of the cut-off, he "heard a loud crash at the back of [his] car", was "knocked unconscious" and knew nothing more until he came to while his injuries were being dressed in a hospital.

A motorcycle guard on the Boulevard, who reached the scene shortly after the accident had happened, testified that he found the plaintiff's car on the grass plot against the fourth tree planted on the plot north of the cut-off and that the defendant's automobile was cater-cornered across the cut-off with its left front wheel in the outer lane just beyond the cut-off and its two rear wheels in the cut-off. The defendant told the guard that she had been going northeastwardly on the Boulevard in the inner lane; that at the cut-off she had made a right-hand turn to get into the outer lane so that she could make a right-hand turn off the Boulevard at the Fanshawe Street intersection beyond to get to her home; that she had looked "up and down" and "didn't see anything"; and that "the first thing she knew, her front fender struck Neff's car, and that was all there was to it". The guard also testified that there were "a couple of creases" in the right front fender of the defendant's car "about even with the headlight". A photograph of the car, which was received in evidence as an exhibit, shows that the damage to the defendant's car was at the front side of the right front fender. Another photographic exhibit shows that there was nothing to obstruct the view of a driver in either lane approaching the cut-

off. The trees that are planted in a longitudinal line in the middle of the separating grass plot were bare of foliage.

The facts of the instant case, as we have related them and as the jury might have found them, made the matter of the defendant's negligence a question for the jury. Of course, the mere happening of the vehicular collision fixed no liability for its causation. Negligence is the gist of an action for such an accident and the burden of proving facts legally sufficient to support a finding of negligence is upon the one asserting consequent liability. As we recently said in *Martin v. Marateck,* 345 Pa. 103, 106, 27 A. 2d 42,—"In addition to establishing the fact of accident, it [is] incumbent upon [the plaintiff] so to describe, picture or visualize what actually happened at the time of the accident as to enable one fixed with the responsibility for ascertaining the facts to find that the [defendant] was negligent and that his negligence was the proximate cause of the accident". See also *Skrutski v. Cochran,* 341 Pa. 289, 291, 19 A. 2d 106, and cases there cited. There is no requirement, however, that the alleged negligence be proven by direct testimony. When such proof is wanting, negligence may be established by circumstantial evidence if the circumstances proven ". . . are such as to satisfy reasonable and well-balanced minds that the accident resulted from the negligence of the defendant: [citing cases]" : *Rowles v. Evanuik,* 350 Pa. 64, 68, 38 A. 2d 255. See also *Giordano v. Clement Martin, Inc.,* 347 Pa. 61, 64, 31 A. 2d 504; *Clark v. Philadelphia Transportation Company,* 156 Pa. Superior Ct. 623, 626, 41 A. 2d 282.

In the instant case the physical facts appearing of record plus the plaintiff's testimony and the defendant's admissions, as related by the guard, were sufficient to warrant a finding by the jury that the defendant, upon turning from her line of parallel travel in the inner lane into the cut-off, failed to see what must have been plainly observable in the outer lane and, as a consequence, negli-

gently drove her car into the rear of the plaintiff's car then passing the cut-off in a direct and unchanged line of travel in the outer lane: see *Pelosi v. Hoffman*, 94 Pa. Superior Ct. 398, where the collision involved likewise occurred at a cut-off on the Roosevelt Boulevard between two cars that had been travelling in the same direction in different lanes. The only difference (a legally immaterial one) between the facts of that case and the present is that in the *Pelosi* case the defendant driver had cut across from the outer lane and struck the plaintiff's car in the rear while it was passing the cut-off in its direct line of travel in the inner lane. The defendant in the *Pelosi* case denied negligence on the ground that, being on the other driver's right in approaching the cut-off, he had a statutory right of way under Sec. 25 of the Act of June 30, 1919, P. L. 678. The Superior Court, in an opinion by the late Judge KELLER, affirmed the judgment for the plaintiff, holding that the question of the defendant's negligence and the plaintiff's contributory negligence were properly for the jury's determination. After pointing out that the statutory rule relied on by the defendant in the *Pelosi* case "applies only where two vehicles are approaching the intersection of two streets, from different streets", and was therefore inapplicable to the facts of that case, Judge KELLER said (p. 400),—"Where two cars are traveling in a parallel direction on the same street, the one on the right has no superior right of way over the one on the left, at either a cross-over or intersecting street, which justifies his cutting in ahead of the car on his left, or running into its rear. On the contrary he must wait until it is reasonably safe for him to cut across." The same is no less true of a driver who cuts across from the inner, or directionally left-hand, lane at a cut-off.

The court below entered the non-suit on the ground that the plaintiff had failed to prove that the accident was the result of the defendant's negligence and not

that the plaintiff was guilty of contributory negligence. In any event, there is nothing in the record before us from which a court could say that the plaintiff was contributorily negligent as a matter of law.

The order of the court below is reversed with a v. f. d. n.