### Blake et vir v. Marinelli, etc.

Before Larrabee, P. J., twenty-ninth judicial district, specially presiding, and Evans, P. J.

*A. Grant Walker*, for plaintiffs.

*English, Quinn, Leemhuis & Plate*, for defendant.

LARRABEE, P. J., August 21, 1948.—This matter is before the court en banc on a motion for a new trial filed by plaintiffs after a verdict of the jury finding in favor of defendant.

Abbie V. Blake and G. Irving Blake, her husband, brought an action in trespass against Michael Marinelli, doing business as Lake Shore Distributing Company, to recover damages for injuries arising out of an automobile accident which plaintiffs allege was the result of negligence on the part of Marinelli in the operation of his auto truck.

It appears that on the afternoon of May 18, 1945, Abbie V. Blake, one of plaintiffs, came out of the State Street entrance of a department store, known as the Boston Store, situated on the west side of State Street in the City of Erie, intending, as she testified, to cross to the east side of State Street from that point.

In front of this store entrance is a "no parking" zone marked with white lines extending from the curb out into the cartway and also marked by "no parking" signs affixed on metal posts or stanchions located at the north and south limits of said zone.

Plaintiff testified she walked over to the north sign, located at this "no parking" zone, preparatory to cross-

ing State Street. This place where she proposed to cross the street was between the intersections of said street by Seventh and Eighth Streets which run at right angles to State Street. That, as she was about to cross State Street, she saw defendant's truck pass southwardly on the western side of State Street directly in front of her, and Mrs. Blake said she followed this truck with her eye for a distance which she estimated to be about 25 feet south of where she was then standing. That as she saw no indication that the truck was going to stop she then stepped down from the curb into the cartway and said she concentrated her attention to the north from which direction the flow of traffic would be expected on the west lane of traffic on State Street. Abbie Blake testified that when she was about "five or six feet" out into the street or cartway she was struck and knocked down but at the time did not know what had hit her. She said she now knows it was defendant's truck as it was backing up toward this store entrance.

It was shown that State Street is 60 feet wide and there is a white line painted in the center running the length of the street. It was also shown that the "no parking" zone in front of the entrance to the Boston Store is 21 feet in length along State Street and it is 135 feet from the center of this zone to the north curb of Eighth Street, the next street intersection south of the Boston Store.

Immediately north of this "no parking" zone there was a space marked off for automobiles to park along the curb and defendant testified that as he drove his truck south on the western side of State Street, immediately before this accident, he observed that this parking space was vacant and he decided to back his truck into this vacant parking space.

Plaintiffs assign 11 reasons for the granting of a new trial. In assignment numbered 3 they contend

that the verdict was against the charge of the court, and the jury "were apparently confused" and may have thought it was the duty of Abbie V. Blake, plaintiff, to cross at the regular street intersection at Eighth and State Streets rather than having the right to cross between the intersections, and further that the jury apparently had gained the impression, from the court's charge, that it was her duty to look in both directions on State Street as she proceeded across that street and her failure so to do while crossing the street rendered her guilty of contributory negligence.

We are of the opinion this assignment is without merit as the court specifically instructed the jury that it was the duty of Abbie Blake to look both to the north and the south for traffic on State Street before attempting to cross the street to ascertain if she could cross in safety and the court then said: "And after undertaking to cross, or, as we sometimes say in law, after committing himself to the crossing of the street, the pedestrian must continue to look at all times while crossing the street. That is the duty resting on him all the way across that street when he is crossing between intersections, to watch out for traffic."

The court followed this by instructing the jury that there was a higher degree of care enjoined on Mrs. Blake when she attempted to cross this street between the Seventh Street and Eighth Street intersections than there would be if she were crossing at one of the regular street intersections. The jury were also instructed that a pedestrian has a right to cross a street between intersections and in doing so has a right to rely on the exercise of reasonable care by the drivers on the highway.

However, we feel it is highly important in passing on this question to point out that at the close of the court's charge when the trial judge asked counsel if they had any requests for further instructions to the

jury, counsel for plaintiffs specifically requested the court to comment on defendant's point numbered 5 which reads as follows:

"5. It was the duty of Abbie V. Blake before stepping from the curb into State Street to look in both directions for vehicular traffic and continue to look as she entered into and was crossing the street."

The court, after again reading this point to the jury, added this instruction:

"We mean by that she must continue to look in front of her and as much as she could as she walked across. We do not say to you she had to look both to the north and south all the way across State Street. That was not intended, but she must be alert. She must use due care as she crosses that street."

At the close of the charge counsel for plaintiffs also asked the trial judge to read the following instruction, which the judge did:

"It is true that, before attempting to cross a street, a pedestrian must look both ways to determine whether or not the crossing can be accomplished with safety. It is also true that a pedestrian must continue to look at all times during the passage. That means passing, crossing the street. But we cannot say to you that, as a matter of law, one is contributorily negligent if he concentrates his attention in the direction from which the traffic would naturally flow. In this case that would be to the north. If Mrs. Blake looked to the south as well as to the north before entering the cartway and then continued to look to the north from which traffic would ordinarily be expected—that would be on her left—while she was in the lane designated for southbound traffic—that means out in the center of the street—then whether or not she was contributorily negligent would be a matter for the jury to determine."

We think it significant to point out that these specific instructions, made at the instance of plaintiffs'

counsel, at the close of the court's charge, would thus bring them most vividly to the attention of the jury. It is obvious they would be impressed on the jury's minds and, as they were the final instructions given just before they retired to deliberate, would remain fresh in their memories and be readily recalled. Therefore, we fail to see any merit in plaintiffs' argument that the jury might have been confused on the question of whether plaintiff, Abbie Blake, would be contributorily negligent if she did not look to the north and to the south on State Street as she was walking across said street. Nowhere during the entire charge did the trial judge say to the jury that it was the duty of Abbie Blake to continue to look to the north and then to the south on State Street after she committed herself to the cartway.

The law is well established in Pennsylvania that it is the duty of a pedestrian to look both to the right and left before undertaking the crossing of a street and, furthermore, the cases hold that the pedestrian must continue to look all the way across the street. It was said in Guy v. Lane, 345 Pa. 40:

"It is settled that a pedestrian crossing a street must not only look before he enters but must continue to look as he proceeds and that he will not be heard to say that he looked without seeing what was approaching and plainly visible."

This principle was reaffirmed in Rucheski v. Wisswesser et al., 355 Pa. 401; Weaver v. Pickering, 279 Pa. 214; Gavin v. Philadelphia Rapid Transit Co., 271 Pa. 73.

And where the pedestrian crosses a street between intersections the law requires that he exercise a higher degree of care than at street intersections, for his own safety: Morris v. Harmony Short Line Motor Transportation Co., 348 Pa. 117; Carnevale v. McCrady-

Rodgers Co., 318 Pa. 369; Schweitzer et al. v. Scranton Bus Company, 344 Pa. 249.

As to assignment numbered 4, to wit: "The court erred in charging relative to contributory negligence and the definition thereof, and in not sufficiently modifying his charge in that respect so as to advise the jury that if the plaintiff looked in both directions before she stepped from the curb and then directed her attention to the north, or the direction from which traffic would naturally flow, that that would not be contributory negligence as a matter of law, but it would be a question of fact for them to determine."

We feel that the court fully instructed the jury on this question as already recited in answering plaintiff's assignment numbered 3, for the court plainly left it to the jury that it was for them to determine whether or not Abbie Blake was contributorily negligent after she stepped from the curb onto the cartway and attempted to cross the street.

As to plaintiffs' assignment numbered 5, that "The court erred in affirming defendant's third point without qualification", we find no merit in this assignment as the court correctly instructed the jury on what constitutes contributory negligence. After defining contributory negligence, as defined in the Restatement of the Law of Negligence, the court then added: "The test for contributory negligence is whether the act alleged as constituting the negligence contributed in any degree to the production of the injury. If it did then there can be no recovery. For negligence to be contributory it must have contributed to the plaintiff's injury." We fail to see how the trial judge could have made this instruction any clearer as the words "in any degree" clearly imply any negligence which in the slightest degree contributed to the injury.

In the instant case plaintiffs were afforded ample opportunity to request the court for additional instruc-

tions on this subject, if they so desired, when the trial judge at the close of his charge specifically asked counsel if they had any requests for further instructions. It has been declared repeatedly by the appellate courts of Pennsylvania that counsel may not complain of the inadequacy of a charge on a particular point when no request to give a more extended charge was presented to the trial judge: Ingram v. Pittsburgh, 350 Pa. 344; Rowles v. Evanuik, 350 Pa. 64.

It was declared in the recent decision in Kasanovich, Admrx., v. George et al., 348 Pa. 199, at page 202:

"Any negligence on the part of a plaintiff that contributes to, and is the proximate cause of, his injury defeats his action. There can be no balancing or matching of degrees of negligence."

In assignment numbered 6 plaintiffs complain that the court erred in affirming defendant's point no. 3½ without sufficient qualification, which point reads as follows:

"It was not illegal for defendant to back his truck on the westerly side of State Street into a parking space. His legal duty was to exercise due care under the existing circumstances."

That is a recital of the settled law on this question, and in commenting on that in the charge the trial judge said: "It was the duty of defendant, Marinelli, in backing his truck for the purpose of parking it, as he has stated, to exercise a high degree of care. Unless a driver is absolutely certain there is no person in his pathway back of his car it involves a risk. A driver who backs a motor vehicle any distance when he cannot see what is behind him and has no one present to tell him what is behind him is inviting injury not only to himself but to others. Now, that does not mean that one may not back a car. . . . There was nothing improper or illegal about Marinelli attempting to back his car there, only there was a degree of duty placed

upon him to exercise great care and know as he backed
his car that no one was behind him. That duty was
laid upon him, but we say to you now it was not illegal
for him to back his car. If you found he was negli-
gent in the way he did it that is for you to determine."

We feel that the court had already fully explained
the duty resting on defendant in backing his car along
the western curb at the time of the accident and it
would not be necessary for the court to add anything
in qualifying defendant's said point numbered 3½.
This instruction is in accord with the ruling in Caulton
v. Eyre & Co., 330 Pa. 385.

In a leading case, that of Sheldon v. James, 175 Cal.
474, 166 Pac. 8 (1917), in which the facts relating
to the manner of backing a truck are quite similar to
those in the instant case, and where a pedestrian was
struck by a car while it was backing into a parking
space, the court said (in referring to a traffic ordi-
nance in force in the City of San Francisco) :

"The ordinance is to be reasonably construed. Its
terms have no reference to the right of chauffeurs, in
congested districts of the city where the parking area
is limited and the vacant spaces in that area even more
limited, to back their automobiles into such a limited
space, and it requires little knowledge of the opera-
tion of such vehicles to know that such backing is in
many instances the only method by which the machine
can be worked into the space and up to the curb of
the street."

It will also be noted in that case that the Supreme
Court of California said that it was the duty of the
pedestrian to "use ordinary care in looking to the
right and left during all the time that he was crossing
the street at other than a regular street crossing."

As to plaintiffs' seventh assignment of error, to
wit: "The court erred in affirming defendant's point
no. 5 without sufficient qualification. The point as

drawn and read to the jury would indicate that plaintiff was under a duty to continue to look in both directions after she had entered the cartway", we have already fully discussed this question and feel there is nothing further to add.

Plaintiffs complain in assignment numbered 8 that the court erred in affirming defendant's point no. 7 and contend that the point should have been denied entirely or modified. This point read as follows:

"7. If the jury find from the evidence in this case that Abbie V. Blake prior to stepping from the curb into State Street did not look to the south for approaching traffic or did not continue to look for approaching traffic after leaving the curb, the verdict of the jury should be for defendant."

It will be noted that there is nothing in this point which in any way contradicts or confuses the court's instruction as to the duty resting on Abbie V. Blake immediately before she stepped from the curb into the cartway for it was clearly her duty to look to the north, as well as to the south from which point defendant's truck was about to back into the vacant parking space mentioned, and we point out that the court in affirming that point did not say that there was a duty resting on Abbie Blake to look to the south for approaching traffic after she stepped into the cartway. The court told the jury explicitly that it was her duty to continue to look for traffic and be alert and use due care as she crossed the street. The court did not say that the duty rested on her to look to the south or to the north after she committed herself to the cartway. We fail to find any just cause for complaint in the court's affirming this point.

As to plaintiffs' tenth assignment that the trial judge in instructing the jury, although he defined negligence and contributory negligence, did not apply these definitions to the testimony, we are of the opinion that

throughout the charge the court clearly brought to the attention of the jury what conduct would amount to contributory negligence on the part of plaintiff Abbie V. Blake by stating her duty before and after entering the cartway, and what would constitute negligence on the part of defendant in backing his truck. The court explicitly told the jury that in backing his truck defendant must be sure there was no pedestrian in the rear of his truck, and he must exercise the highest degree of care, otherwise he was inviting great danger not only to pedestrians but to the driver himself. We are of the opinion that the jury could clearly understand from this what duty rested on defendant and what would constitute negligence on his part.

In the eleventh and final assignment of error plaintiffs complain that the court failed to instruct the jury that if they found defendant was guilty "of reckless or wanton misconduct" then, even though plaintiff might be guilty "of some contributory negligence" such contributory negligence would not be a bar to her right of recovery against defendant.

We dismiss this assignment of error with the statement that nowhere in plaintiffs' statement of claim is there any averment that defendant was guilty of "reckless or wanton misconduct". Plaintiffs, on this question of negligence, simply averred in the statement of claim in paragraph 7 "that her injuries were caused solely by the negligence of defendant as hereinafter set forth". Again in paragraph 11, after reciting the injuries alleged to have been sustained by Abbie V. Blake, plaintiffs' statement contains this averment: "All of the aforesaid injuries to the said Abbie V. Blake are the direct result of the carelessness and negligence of defendant as follows."

Plaintiffs cannot, after the case has been tried and verdict rendered, make certain averments as to de-

fendant's conduct that are not specifically pleaded in the statement of claim.

In Kasanovich, Admrx., v. George et al., 348 Pa. 199, at page 203, our Supreme Court said:

"It must be understood, of course, that wanton misconduct is something different from negligence however gross,—different not merely in degree but in kind, and evincing a different state of mind on the part of the tortfeasor. Negligence consists of inattention or inadvertence, whereas wantonness exists where the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong."

And to this we might add that the only testimony as to the rate of speed and the manner in which he backed his car is that of defendant Marinelli, who testified that he drove south on State Street, past the scene of the accident, at a rate of 15 miles an hour; he then stopped and reversed his car and started to back into the parking space at the rate of about "one to two miles an hour". We find nothing in this to warrant the charge that there was "wanton and reckless conduct" on his part although the jury might well have found that he was guilty of negligence in not taking greater precautions to first ascertain if anyone was in the cartway in the rear of his truck.

Abbie Blake testified that as she stood on the curb she saw defendant's truck pass south, directly in front of her, and that she followed it "with her eyes" for a distance which she estimated to be about 25 feet from where she was standing, and she then stepped down from the curb into the cartway intending to cross the street and after she had proceeded "five or six feet" from the curb was struck by defendant's truck. In view of plaintiff's own testimony, we can

hardly avoid the conclusion that the jury must have found that Abbie Blake could not have looked and used due care, for it is apparent that if she had she would have seen the rear of defendant's truck which then must have been almost upon her.

It was said in Dando v. Brobst et al., 318 Pa. 325, at page 328:

"Where one steps into a busy street and is immediately struck by a passing vehicle which he could have seen had he looked, he is barred by his own negligence": Harris v. Commercial Ice Co., 153 Pa. 278; Weaver v. Pickering, 279 Pa. 214; Goff v. College Hill Boro., 299 Pa. 343. In Dando v. Brobst, supra, the Supreme Court further said (p. 329) :

"Plaintiff was under a duty to look before stepping into the street, and since the 'incontrovertible physical facts' show that the car was almost upon her when she stepped from the curb and that she would certainly have seen it if she had looked, it is plain that she must have failed to look. Her own negligence therefore bars her recovery."

It is obvious that after defendant's truck passed this store entrance where Mrs. Blake was standing he could not, in an instant, back his car into the parking space for he would first have to bring his car to a complete stop and then shift the gears into reverse before he could start backing his truck. Therefore, the jury may well have concluded that if Mrs. Blake had looked to the south as well as to the north before she stepped from the curb to the cartway she could not have failed to see defendant's truck as it stopped and got into position to back toward the point where she was standing.

Abbie Blake admitted that she did not see the truck stop although the undisputed testimony is that it stopped less than 40 feet from the spot where she was standing. She said: "After the truck passed I stepped

down and I looked to the north." The undisputed testimony is that her body lay only five feet from the west curb after she was hit.

We feel that this case comes within the class of cases where a person is injured at a railroad or street crossing immediately upon entering the same and it was declared by the appellate courts he could not have looked for approaching traffic otherwise he could not have helped seeing it. It is undisputed in the instant case that plaintiff Abbie V. Blake was struck almost instantly after she stepped from the curb on to the cartway.

We conclude that plaintiffs' motion for a new trial should be refused.

### Order

And now, to wit, August 21, 1948, the rule to show cause why a new trial should not be granted is discharged.