COMMONWEALTH of Pennsylvania, DEPARTMENT OF GENERAL SERVICES, Pennsylvania Department of Transportation, Pennsylvania Public Utility Commission, Pennsylvania Emergency Management Agency, and Pennsylvania Department of State, Plaintiffs

v.

UNITED STATES MINERAL PRODUCTS COMPANY, Certainteed Corporation, Courtaulds Aerospace, Inc., Chemrex, Inc., Philips Electronics North America Corporation, Advance Transformer Company, and Monsanto Company, Defendants.

Commonwealth of Pennsylvania, Department of General Services, Pennsylvania Department of Transportation, Pennsylvania Public Utility Commission, Pennsylvania Emergency Management Agency, and Pennsylvania Department of State, Plaintiffs

v.

United States Mineral Products Company, Defendant.

Commonwealth Court of Pennsylvania.

Oct. 16, 2002.

Publication Ordered Nov. 1, 2002.

Thomas W. Henderson, Pittsburgh and Kenneth B. McClain, Independence, MO, for plaintiffs.

Thomas M. Goutman, Philadelphia, for defendant, Monsanto Company.

Kenneth R. Neal, Hartford, CT, for defendant, U.S. Mineral Products Co.

Joyce S. Meyers, Philadelphia, for defendant, Courtaulds Aerospace, Inc.

BEFORE: MIRARCHI, Jr., Senior Judge.

OPINION BY Senior Judge MIRARCHI.

On August 23, 2000, the jury returned a verdict in favor of Courtaulds Aerospace, Incorporated, finding that the caulk it manufactured was not defective. On September 11, 2000, Plaintiffs filed a motion for a new trial against Courtaulds alleging that the Court made the following legal errors: (1) The Court erred in refusing Plaintiffs' proposed Point for Charge No. 34, and precluding relevant and admissible "post-sale" evidence, thereby permitting Courtaulds to assert a state-of-the-art defense; (2) the Court erred in its instructions regarding damages; and (3) the Court erred in permitting Courtaulds to adduce evidence regarding the Mega Rule.

In order to obtain a new trial, the moving party must demonstrate in what way the claimed trial error caused an incorrect result. *Clack v. Department of Transportation*, 710 A.2d 148 (Pa.Cmwlth. 1998). In ruling on a motion for a new trial, the court must view all the evidence, *Abbott v. Steel City Piping Co.*, 437 Pa. 412, 263 A.2d 881 (1970), and if the trial court concludes that the judicial process has effected a serious injustice, only then should it grant a new trial. *Smith v.*

*Barker,* 368 Pa.Super. 472, 534 A.2d 533 (1987). A new trial should not be granted because of a mere conflict in testimony or because the trial judge on the same facts would have arrived at a different conclusion. *Andrews v. Jackson,* 800 A.2d 959 (Pa.Super.2002).

Plaintiffs first argue that the Court erred in refusing to give its proposed Point for Charge No. 34.[1] Plaintiffs claim that the Court's failure to give this instruction was prejudicial to them because it permitted Courtaulds to argue in closing that its product complied with governmental standards which existed at the time of sale, leading the jury to find that the product was not defective.

■■■■ A trial judge has wide latitude in his or her choice of language when charging a jury, provided that the instruction fully and adequately conveys the applicable law. *Birth Center v. St. Paul Companies, Inc.,* 727 A.2d 1144 (Pa.Super.1999). A motion for a new trial should be granted where the reading of the jury charge against the background of the evidence reveals that the jury charge might have been prejudicial to the complaining party. *Salameh v. Spossey,* 731 A.2d 649 (Pa. Cmwlth.1999). An error in a jury charge is sufficient ground for a new trial if the charge, taken as a whole, is inadequate, unclear, or has the tendency to mislead or confuse rather than to clarify a material issue. *Von der Heide v. Department of Transportation,* 553 Pa. 120, 718 A.2d 286 (1998).

■■■■ A refusal to give a proper instruction requested by a party is grounds for a new trial only if the substance of that instruction was not otherwise covered by the trial court's general charge. *Burke v. Buck Hotel Inc.,* 742 A.2d 239, 246 (Pa. Cmwlth.1999). Additionally, the trial court is not bound to use the exact language of a requested jury charge; it may choose another form of expression so long as it adequately and clearly covers the subject. *Buckley v. Exodus Transit & Storage Corp.,* 744 A.2d 298 (Pa.Super.1999).

■■■■ The Court instructed the jury that a manufacturer of a product "is subject to liability for the harm caused to the plaintiff by a defect in the article which existed when the product left the possession of the manufacturer. Such liability is imposed even if the manufacturer has exercised all possible care in the preparation and sale of the product." Notes of Testimony (N.T.), August 10, 2000, p. 89. The Court adequately instructed the jury that a manufacturer may be held liable "even if the manufacturer has exercised all possible care" in the preparation of the product. The Court's instruction made clear to the jury that the reasonableness of a defendant's conduct is not a defense if a defect in the product caused harm to the plaintiff. The Court's refusal to give Plaintiffs' proposed Point for Charge No. 34 is not the basis for granting a new trial.

■■■■ Plaintiffs next argue that the Court erred in excluding certain documents which were created after the construction of the Transportation and Safety Building (T & S Building).[2] Plaintiffs contend that these documents were relevant

---

**1.** Plaintiffs' proposed Point for Charge No. 34 is as follows:

Under the law, the Defendants may not use what is commonly referred to as a 'state of the art' defense in a product liability case. In other words, the Defendant may not argue that its product conformed to industry

or governmental standards to rebut the Plaintiffs' claim of defect. Additionally, it is not a valid defense for the Defendant to argue that a safe design did not exist in the industry at the time of manufacture.

**2.** These documents are Exhibits MON 197, 230, 292, 304, 307, 308, 312, 314, 333, 347,

to the issue of whether PCBs, used as a plasticizer in material such as caulk, could escape from the caulk. Plaintiffs contend that these documents were also admissible as either business records, under Rule 803(6) of the Pennsylvania Rule of Evidence Pa. R.E. 803(6), or admissions against interest under Pa. R.E. 803(25).

Monsanto and CertainTeed objected to the admission of the documents.[3] Monsanto asserted that the documents were inadmissible on multiple grounds, including, *inter alia*, the documents were not relevant; the documents were hearsay; some of the documents were draft documents; the documents required expert testimony; and the documents post-dated the sale in the case. CertainTeed argued that the documents were not relevant to the issues in the case; the probative value of the documents was outweighed by the danger of their unfair prejudicial effect; and the documents were hearsay. On July 13, 1999, the Court sustained Monsanto's objections and ruled that Monsanto's documents were not admissible. The Court noted that a number of the documents would require expert testimony and that draft documents were not admissible. On September 3, 1999, the Court sustained CertainTeed's objections to the admission of its documents.

■■■■ The admission or exclusion of evidence is within the sound discretion of the trial court. *Bennyhoff v. Pappert*, 790 A.2d 313 (Pa.Super.2001). To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Ettinger v. Triangle–Pacific Corp.*, 799 A.2d 95 (Pa.Super.2002). Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment. *Bryant v. Reddy*, 793 A.2d 926 (Pa.Super.2002).

We have reviewed the documents in question and conclude that the Court did not err in excluding them at trial. As previously noted by the Court, some of the documents are draft documents and some of the documents would require expert testimony. Moreover, none of the documents relate to the issue of whether Courtaulds' caulk is defective. As to Plaintiffs' argument that these documents are admissible under Pa. R.E. 803(6) or Pa. R.E. 803(25), we note that none of the documents is a Courtaulds business record or an admission by Courtaulds.

Plaintiffs also argue that the Court made several errors in its instructions regarding damages. First, Plaintiffs contend that the Court erred by instructing the jury that in order to prove that Courtaulds' product was defective, Plaintiffs must show by "credible scientific evidence" that the presence of PCBs in the caulk made it unsafe for its intended use. Plaintiffs argue that this instructions placed a higher burden of proof on Plaintiffs than that required by law.

Second, Plaintiffs argue that the Court erred in instructing the jury that it could only find Courtaulds liable if the presence of PCBs in the caulk was a substantial factor in requiring increased costs to Plaintiffs for removing and disposing of the exterior wall caulk "as part of the building demolition." Plaintiffs contend that this instruction improperly combined the definition of "defect" and "damage" and permitted the jury to impose liability only if it found that demolition of the building was proper.

■■■■ At trial, Plaintiffs sought to prove that Courtaulds' caulk was defective

---

388, 472, 643, 827, 858, 868, 1016 and CTD 076, 079, 080, 082, 089 and 127.

**3.** Courtaulds joined Monsanto's objections and participated in the argument against admitting the documents.

because it contained PCBs. Whether a product is defective solely because of its chemical composition is a matter beyond the knowledge of the average layperson. Consequently, expert testimony on this issue is required. *See Harkins v. Calumet Realty Co.,* 418 Pa.Super. 405, 614 A.2d 699 (1992); *Dion v. Graduate Hospital,* 360 Pa.Super. 416, 520 A.2d 876 (1987). The Court did not err in instructing the jury that Plaintiffs were required to prove by credible scientific evidence that the presence of PCBs in the caulk made it unsafe for its intended use.

■ As to Plaintiffs' second argument, Plaintiffs have not identified any evidence, presented at trial, of any unforeseen or remote consequences attributable to the caulk. The only evidence of damages relating to the caulk was the cost of removal and disposal of the caulk as part of the building demolition. The Court did not err in its instructions to the jury that "the only damages, if any, that you may award against Courtaulds are the cost of stripping out and disposing of exterior wall caulk and adjacent strips of concrete." N.T., August 10, 2000, p. 100.

Finally, Plaintiffs argue that the Court erred in permitting Courtaulds to adduce evidence regarding the Mega Rule,[4] the effective date of which occurred after Plaintiffs' remediation of the T & S Building. Plaintiffs argue that evidence about the Mega Rule was irrelevant to the issues of product defect and Plaintiffs' damages and, consequently, its introduction was unduly prejudicial.

■ The basic requisite for the admission of any evidence is that it be both competent and relevant. *Charlton v. Toy-*

*ota Industrial Equipment,* 714 A.2d 1043 (Pa.Super.1998). Evidence is considered relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact. *Carpenter v. Pleasant,* 759 A.2d 411 (Pa.Cmwlth.2000), *petition for allowance of appeal denied,* 566 Pa. 668, 782 A.2d 549 (2001). The question of whether evidence is relevant and, therefore, admissible, rests within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion. *Zeffiro v. Gillen,* 788 A.2d 1009 (Pa.Super.2001).

■ At trial, Plaintiffs' expert witness William Ewing testified that removal of the caulk from the precast concrete panels on the exterior of the T & S Building was necessary to comply with applicable regulations and recommended practices, and that removing the caulk and disposing of it in a TSCA[5] landfill was required to prevent contamination and to protect human health and the environment. N.T., May 20, 1999, pp. 316–17. Evidence of the Mega Rule was properly admitted so that the jury could determine whether removal of the caulk was required by regulations, as Ewing had asserted.

Evidence of the Mega Rule was also relevant to rebut Ewing's assertions that the caulk was defective because of the presence of PCBs, and that the presence of PCBs required its disposal at a TSCA landfill. Courtaulds could properly argue that the Mega Rule represented EPA's determination that the caulk was not an environmental hazard.

---

**4.** The Mega Rule was formally adopted by the United States Environmental Protection Agency (EPA) on June 29, 1998 and it became effective on August 28, 1998. The Mega Rule pertinently states that PCB-containing caulk may be treated as ordinary demolition debris

and disposed of in a non-hazardous municipal landfill. 40 C.F.R. § 761.62.

**5.** Toxic Substances Control Act, 15 U.S.C. §§ 2601–2692.

### ORDER

AND NOW, this 16th day of October, 2002, upon consideration of Plaintiffs' motion for post-trial relief and the response of Courtaulds Aerospace, Incorporated thereto, said motion is denied.