**Dockside Assocs. Pier 30 LP v. Board of Revision of Taxes**

C.P. of Philadelphia County, March Term, 2013 No. 3577; 2258 CD 2014

*Gaetano Paul Piccirilli, III, Patrick Michael Northen, Lawrence G. McMichael* and *Michael Patrick Gallagher*, for appellants.

*James Christopher Vandermark, Amanda Justine*

*Dougherty* and *Jeremiah Vandermark*, for appellee.

PADILLA, *J.*, Feb. 20, 2015—Dockside Associates Pier 30 LP ("appellant"), appeals from this court's denial of its appeal from the final decision of the Board of Revision of Taxes ("appellee") regarding the tax assessment of one hundred and fifty three (153) condominiums.

## PROCEDURAL HISTORY

On March 23, 2013, appellant filed an appeal of the February 27, 2013 final adjudication of the board.

On September 3, 2013, this court received the certified record from appellee.

On April 21, 2014, appellee filed its brief.

On May 8, 2014, appellant filed its brief.

This court heard argument and evidence in this case over the course of four days: August 11, August 12, August 15, and August 25 of 2014.

On November 5, 2014, this court denied appellant's appeal.

On December 3, 2014, appellant filed a timely notice of appeal to the Commonwealth Court of Pennsylvania.

On December 4, 2014, this court issued its order pursuant to Pa. RAP. 1925(b), directing appellant to file its concise statement of matters complained of on appeal within twenty-one (21) days.

On December 23, 2014, appellant filed its concise statement of matters complained of on appeal, listing eleven (11) alleged errors, averring that this court erred as its order was not supported by substantial evidence; it failed to make findings regarding the fair market value of the subject properties despite the conflicting evidence of fair market value; that this court erred in finding appellant did not meet its burden of proof to overcome the City's *prima facie* case; that this court "erred in giving deference to the city's opinion of value instead of conducting a proper *de novo* review;" that this court erred in finding appellant's evidence not reliable or credible; that this court erred in finding that appellants had offered no authority regarding the use of the fractured condominium approach; that this court erred in finding the sales comparison approach to be the correct method; that the court erred in finding that the highest and best use of the subject property was as units for sale; that this court erred in refusing to admit for impeachment purposes evidence that the City's expert had "made prior inconsistent statements" in previous appraisals; that this court erred in accepting the City's expert testimony as credible; and in finding that the Pennsylvania Uniform Condominium Act precludes treatment of multiple units within the same condominium project as an integrated economic unit.

## FACTUAL HISTORY

Dockside Associates Pier 30 LP is the record owner of the subject property, a condominium building located at

717 S. Christopher Columbus Boulevard, Philadelphia, PA 19147. The property is located in a CMX-3 mixed-use district and zoned accordingly. The property is a sixteen story building containing 242 residential units and three stories of private parking garage. Construction was completed in September 2002, and the Dockside Condominium Association was formed April 4, 2006. The properties possessed a ten year property tax abatement that expired in 2012. Since 2007, the tax year following the creation of the Condo Association, the Office of Property Assessment ("OPA") assessed a separate market value for the Units.

The subject properties were inspected by A. R. Hughes and Associates on January 11, 2013 with an effective valuation date of December 31, 2013. The City's appraisal report listed a separate value for each of the one hundred and fifty two (152) units and was assessed using a sates comparison approach and highest and best use analysis (noting the highest and best use was to sell the units on the open market for residential owner occupants) and a 32% established predetermined ratio for the tax rate. *See* attached order; *see also* notes of testimony, hereinafter N. T., at 8/11/14 at 17. Additionally, it assessed the fair market value of the single commercial unit at $4,524,600.

On February 7, 2013, Harvey M. Levin ("Levin"), using a "fractured condominium" model[1] and an Income

---

1. Per Levin's definition, a "fractured condominium" is a "residential condominium development or conversion project in which many units remain unsold; often a distressed property previously offered for sale as

capitalization approach to value[2], produced a summary appraisal report for Dockside noting an implied market value for assessment purposes for the taxable year of $20,549,868; however, as a result of his analysis, he appraised the subject properties' value collectively at $14,965,000. *See* certified record; summary appraisal report.

Following this appraisal report, Dockside filed a separate appeal for each Unit, challenging the assessed market value. Following public hearings on February 21, 2013, the board reviewed the evidence presented and, on February 27, 2013, denied proposed reductions to the 2013 market values.

As noted above, this court heard argument and testimony over the course of four days. This court has considered all of the evidence and testimony presented and will address the facts relevant to its decision herein.

Testimony presented established that the OPA assesses condominium units based on a sales comparison

---

individual condominium units where the remaining units are remarketed as rental units and then sold as an apartment project. Sometimes the remaining units are sold in bulk at a discount." *See* certified record; summary appraisal report, *See also* N. T. 8/11/14 at 110.

2. Per Levin's explanation, this approach is used "in appraising income-producing properties. The value indicated by this approach rests on the ability of the property to produce future net income during the remaining economic life of the improvements ... Requires the estimation of the potential income and expenses and the selection of the most appropriate capitalization method. The resulting net income is then converted into an indication of value...for purposes of our analysis, we have utilized direct capitalization. This method of capitalization is used to convert a single year's net operating income into an indication of value." *See* certified record; summary appraisal report.

approach. N.T. 8/11/14 at 22-23; 33. A condominium unit is considered a separate property with a separate tax identification number, and regardless of how many condominium units a single owner possesses, each is assessed with its own fair market value. N. T. 8/11/14 at 24. The residences at Dockside have been assessed as single units since 2007. N. T. 8/11/14 at 25. The OPA relies upon comparable sales in determining the market values of individual units. N. T. 8/11/14 at 33. The 2013 assessed value had a predetermined ratio of 32% set by set. N. T. 8/11/14 at 26. Dockside objected to the fact that the OPA assessor had not personally visited the Dockside Condominiums, but had only driven by them. N. T. 8/11/14 at 36-38.

Dockside presented testimony that, in 2006 and 2007, it had sold sixty-one (61) condominium units. N. T. 8/11/14 at 50. However, beginning in 2008 until the present day, it has sold forty-two (42) condominium units, on average six (6) units per year. N. T. 8/11/14 at 50. In total, it has sold one hundred and three (103) units out of a total of two hundred and forty-two (242) units. N. T. 8/11/14 at 53. Six (6) of those sales were in 2013 and several were for significantly more money than Dockside's proposed market values. N. T. 8/11/14 at 93, For example, Unit 1020, allocated a market value of $118,138 by Dockside's method, sold on May 6, 2013 for $625,462. N. T. 8/12/14 at 73-74, 77.

Levin testified for Dockside that the instant case was

"the first fractured condominium that has been appraised in this part of the country." N. T. 8/11/14 at 107. Using an income-based approach, Levin examined the history of the property, operating statements, typical leases, floor plans, etc. N. T. 8/11/14 at 116-119. He utilized the income-based approach due to the "nature, character, and history of Dockside;" this involves looking at the gross income attributed to the building and conducting appropriate expenses to arrive at the net operating income, finding the capitalization rate, and dividing net operating income by that rate to yield an indication of market value. N. T. 8/11/14 at 120, 136. Levin valued the Dockside units as "one property, a fractured condominium, with the value indicated by the sales...[and] the contribution that each unit made to operating the income of the entire building." N. T. 8/11/14 at 127.

Levin concluded that the net operating income was $1,964,00.00. N. T. 8/11/14 at 140. He used an overall capitalization rate of 113/4. N. T. 8/11/14 at 141. Thus, he concluded that the fair market value of the unsold units was $14,965,000 for the taxable year 2013 and $17,500,000 for the taxable year 2014. N. T. 8/11/14 at 141-142. Levin averred that, in a fractured condominium, there are "no sales" and therefore no comparables. N. T. 8/11/14 at 150. Levin averred that Dockside would be "stuck" with the unsold units for a very long time, and that it could take as long as twenty (20) years to achieve a sellout of all units. N. T. 8/12/14 at 82-83.

The City presented as rebuttal the expert testimony of John Rush ("Rush"), a certified real estate appraiser, who came to the conclusion that the opinions of value expressed by Levin were not credible, based upon his reading of the report; his experience; and his general knowledge of the real estate market, N. T, 8/15/14 at 15, 17. Rush testified that the City uses the sales comparison approach, which is an "evaluation technique wherein the appraiser collects data concerning the sales of comparable properties, makes adjustments to that data said [*sic*] for the differences between comparable sales and subject property. After the adjustment process has been completed, the data should point to what the value of the estate should be." N. T. 8/15/14 at 20. This is a common method for appraising condominium units. N. T. 8/15/14 at 15.

Rush, who had performed valuations of fractured condominium units, expressed concerns over Levin's lack of presentation of market data, i. e. comparable property rents being received from the marketplace, discussion and analysis of vacancy rates comparable to the marketplace, and analysis and discussion of operating expenses based upon that of similar properties. N. T. 8/15/14 at 24. Rush stated that even with the income capitalization method, the overall capitalization rate should be derived from the market for a market value opinion. N. T. 8/15/14 at 24. Rush opined that normally, in such a case, to remain consistent with the valuation technique, the appraiser would have collected and performed an analysis for the rest of comparable properties in the area. N. T. 8/15/14

at 31-32. Additionally, Rush testified that the report was inaccurate with regard to its vacancy projection because in his practice of appraising multifamily dwellings, the general market vacancy was nowhere near twenty (20) percent. N. T. 8/15/14 at 46. He recommended that the City not rely upon the Levin appraisal as an indication of value. N. T. 8/15/14 at 62.

Albert R. Hughes, III ("Hughes"), real estate appraiser, testified for the City that each condominium unit, upon creation, is assigned an individual tax identification number. N. T. 8/15/14 at 104. Each condominium unit is considered a separate property saleable unto itself. N. T. 8/15/14 at 104. Hughes appraised one hundred fifty-two (152) condominiums in the Dockside building as individual condominium units and completed an appraisal report. N. T, 8/15/14 at 105. Hughes defined market value as "the price which the purchaser, willing but not obliged to buy, would pay an owner, willing but not obliged to sell, taking into consideration all uses to which the property is adapted and might in reason be applied." N. T. 8/15/14 at 109. In performing the appraisal, Hughes used sales as well as resales in several local condominium projects along the Philadelphia waterfront. N. T. 8/15/14 at 125-128. Hughes determined the highest and best use of the condominium units was residential occupancy and future sales to the end user, and to come to this conclusion he considered: legal permissibility; physical possibility; financial feasibility; and maximum productivity. N. T. 8/15/14 at 130-131.

Hughes also testified that a number of other residential condominium units, including Society Hill Towers and Pier Three Condominiums, are within a mile of Dockside; the South Street overpass is quite close to Dockside, as well as grocery stores and shopping between one and one quarter miles from the properties. N. T. 8/15/14 at 112-113, 126-128.

In a surrebuttal, John Hosey ("Hosey") testified for Dockside that he found Rush's report inaccurate as to the assessment of fractured condominiums because apartment building sales are irrelevant to a fractured condominium analysis. N. T. 8/25/14 at 15-16, 24. Hosey felt that Levin's report was as complete as possible. N. T. 8/25/14 at 16.

## DISCUSSION

In a tax assessment appeal, the appellate scope of review is limited to a determination of whether the trial court committed an error of law or abused its discretion in determining a property's fair market value. *B.P. Oil Co., Inc. v. Delaware Cnty. Bd. of Assessment Appeals*, 114 Pa. Cmwlth. 549, 552, 539 A.2d 473, 474-75 (1988).

In any appeal of a real estate tax assessment, the trial court is required to make a determination of the market value and assessed value of the subject property, and the matter is heard *de novo*. 72 P.S. § 5020-518.2; *Green v. Schuylkill Cnty. Bd. of Assess. Appeals*, 772 A.2d 419, 425 (Pa. 2001). The court must "independently determine the fair market value of the parcel on the basis of the

competent, credible and relevant evidence presented by the parties." *Id.* Where there is conflicting evidence regarding the market value of the property the trial court commits error when it does not make findings regarding fair market value. *Fosko v. Bd. of Assess. Appeals*, 646 A.2d 1275, 1279 (Pa. Cmwlth. 1994). The court should weigh evidence, determine issues of credibility, and resolve conflicts in favor of at least one of the parties. *Id.*

In a *de novo* assessment appeal the taxing authority first enters the official assessment record into evidence and may provide testimony from an assessment officer. *Herzog v. McKean Cnty. Bd. of Assess. Appeals*, 14 A.3d 193, 200 (Pa. Cmwlth. 2011). This establishes a prima facie case for the validity of the assessed market value. *Id.* The taxpayer then puts on its case-in-chief and bears the burden of producing reliable, credible evidence. *Id.* In an assessment appeal, all matters of credibility and evidentiary weight are within the province of the trial court. *Mellon Bank, N.A. Appeal*, 78 Pa. Commonwealth Ct. 463, 467 A.2d 1201 (1983). Once the taxpayer meets the burden, the OPA's assessment is no longer considered; the taxpayer then bears the burden of persuading the court of the merits of its appeal. *Id.*; *Green*, 772 at 426, Once the case-in-chief closes the taxing authority may rebut the taxpayer's evidence. *Id.* This court conducted a full *de novo* assessment, with both sides presenting expert testimony and exhaustive argument over the course of four (4) days. As noted above, all matters of credibility and evidentiary weight are within the province of the trial

court.

To find the assessed value the court applies the "established predetermined ratio" unless "the common level ratio" as determined by the state tax equalization board varies by more than 15%. 72 P.S. § 5020-518.2(b). In 2013, the EPR was 32% and the CLR was 30.6%. Phila. Code § 19-1301(1)(b).

Thus, considering the dispute between the parties existed mainly in the method of determining said market value, the issue before the court is a narrow one: which method of calculation was correct. In the instant case, this court did not find Dockside's evidence credible. Although Dockside presented exhaustive testimony and argument regarding their method of appraisal, they offered no real authority regarding the appropriateness of a "fractured condominium" and income capitalization approach as opposed to the City's method, utilizing a sales comparison approach and its view that the highest and best use was residential sales of individual condominium units with separate tax identification numbers to the end user. Dockside argued that there were no comparable sales because Dockside is isolated; however, the City presented testimony that comparable properties, including the Society Hill Towers, were not far away; additionally, Hughes testified that the South Street overpass is quite close, as well as grocery stores and shopping between one and one quarter miles from the properties. N. T. 8/15/14 at 112-113, 126-128.

Ultimately, Dockside could not provide authority as to why this court should ignore the Pennsylvania Uniform Condominium Act, also defining each condominium as a separate parcel to be taxed and assessed separately. *See* 68 Pa.C.S. § 3105. Additionally, following direct examination of Harvey Levin and rebuttal testimony from John Rush, this court did not find Dockside's expert assessment evidence reliable or credible.

Consequently, this court upheld the City's fair market value assessment as reflected by the proposed values in the appraisal report prepared by A. R. Hughes & Company as attached in the Schedule of Market values, and that the fair market value of commercial unit, case no. 130303577 was $4,524,600.00 for tax year 2013; $4,524,600.00 for tax year 2014; and $4,524,600,00 for tax year 2015.

Appellant raises additional issues in its statement that were not addressed in this court's findings of fact and conclusions of law, namely that this court erred in refusing to admit for impeachment purposes evidence that the City's expert had made prior inconsistent statements in three previous appraisals. A witness may be impeached with proof that on a previous occasion he made a statement inconsistent with his present testimony; a litigant also has the privilege of offering rebuttal testimony. *Feingold v. Se. Pennsylvania Transp. Auth.*, 512 Pa. 567, 575-76, 517 A.2d 1270, 1274 (1986).

On August 15, 2014, appellant during its cross examination of Hughes, attempted to introduce appraisals

of the subject properties made by Hughes in 2008. Appellee objected, and Hughes explained to this court that ethical rules used in the Uniform Standards of Professional Appraisal Practice prohibited him from discussing any appraisal performed for other clients without their permission. N. T. 8/15/14 at 193. Appellee argued, additionally, that it could not be sure whether the appraisal was prepared for tax purposes, financing, or settlement purposes. N. T. 8/15/14 at 193-194. Hughes stated that the appraisal was not made for the purpose of the tax assessment. N. T. 8/15/14 at 194. Appellant attempted to introduce an appraisal made in 2005 for M&T Bank, to which the appellee raised the same objection. N. T. 8/15/14 at 195-196. After testimony that the appraisal was not made for a tax assessment, this court sustained the objection, N. T. 8/15/14 at 195-196.

On August 21, 2014, this court heard argument on an emergency motion to quash subpoenas of Hughes and an incorporate designee of M&T Bank filed by appellee. N. T. 8/21/14 at 6. Appellee argued that on August 15, 2014, appellant did not indicate that there were other surrebuttal witnesses they would wish to call, and that appellee had only that day discovered the subpoenas. N. T. 8/21/14 at 7. Appellant argued that the representative for M&T Bank would testify that the witness would testify that the appraisals were performed for "evaluating the project," and additionally that it wished to introduce appraisals from 2005, 2008, and 2010. N. T. 8/21/14 at 15-16. This court had previously ruled said appraisals inadmissible

several times. N. T. 8/15/14 at 192-197.

The basic requisite for the admission of any evidence is that it be both competent and relevant. *Com., Dep't of Gen. Servs. v. U.S. Mineral Products Co.*, 809 A.2d 994, 999 (Pa. Commw. Ct. 2002) "Evidence is considered relevant if it logically tends to establish a material fact in the case, tends to make the fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Id.* Questions of relevance and admissibility are within the sound discretion of the trial court and will not be reversed on appeal absent a showing that the court clearly abused its discretion. *U.S. Mineral Products Co.*, 809 A.2d at 999. In the instant case, the court had already ruled upon the evidence appellant attempted to introduce and held that it was not relevant for purposes of impeachment as it had not been prepared for a tax assessment basis. On August 21, 2014, appellant again attempted to introduce the same appraisals.

Consequently, this court denied the subpoenas based on relevance. N. T. at 16.

## CONCLUSION

For all of the reasons stated above, this court's decision should be affirmed and appellant's appeal denied.